## MELANSON v. UNITED STATES.

### ELLSWORTH v. SAME.

(Circuit Court of Appeals, Fifth Circuit.   April 4, 1919.)

### Nos. 3195, 3200.

1. Poisons ⊙⇒9—Violation of Narcotic Act—Averment of Character of Drugs.

An indictment charging violation of the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), which averred that defendant at the time of the offense knew that cocaine was a derivative of coca leaves, and that morphine and heroin were salts and derivatives of opium, sufficiently averred by implication the fact that cocaine was a derivative of such leaves, and that morphine and heroin are salts or derivatives of opium.

2. Criminal Law ⊙⇒1186(4)—Indictment—Appeal—Harmless Imperfections.

In view of Rev. St. § 1025 (Comp. St. § 1691), imperfections in indictment for violating the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), in that it did not aver that cocaine is a derivative of coca leaves, and that morphine or heroin are salts or derivatives of opium, held harmless imperfections, carrying no consequences.

3. Indictment and Information ⊙⇒111(1)—Harrison Narcotic Act—Failure to Avoid Exceptions of Act.

Under Harrison Narcotic Act, § 8 (Comp. St. § 6287n), indictments charging violation of the act were not defective, because not averring facts showing defendants did not come within any of the exceptions of the act.

4. Poisons ⊙⇒9—Harrison Narcotic Act—Derivatives of Drugs—Sufficiency of Evidence.

In prosecutions for violating and conspiracy to violate the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), evidence in one case held sufficient to show the drugs, cocaine, morphine, and heroin, are salts and certainly derivatives of coca leaves or opium, and, in the second case, sufficient to authorize submission of the issue to the jury.

5. Criminal Law ⊙⇒304(1)—Judicial Notice—Facts of Chemistry.

The courts take judicial notice of the facts of chemistry contained in the United States Pharmacopœia.

6. Criminal Law ⊙⇒371(1)—Other Offenses—Sale of Narcotics—Evidence—Intent.

In prosecution of a physician for violating the Harrison Narcotic Act (Comp. St. §§ 6287g-6287q), order forms used by defendant to procure morphine from a druggist, other than the one with whom he was charged with having conspired and with having made a sale, were admissible on the issue of intent to furnish the drug to an addict, and not to aid or cure a patient in his practice as a physician.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. CRIMINAL LAW ☞472—HARRISON NARCOTIC ACT—EXPERT EVIDENCE.

In prosecution of physicians for violating the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), the testimony of qualified medical experts that the prescribing of the drug under stated quantities and circumstances would not be in the course of a physician's regular practice was admissible, on the issue whether the drug was dispensed in the legitimate course of defendants' practice as physicians.

8. CONSPIRACY ☞48—HARRISON NARCOTIC ACT—GUILT OF PHYSICIANS—QUESTION FOR JURY.

In prosecutions of physicians for having conspired to violate the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), and having made sales illegally, question whether or not each defendant had conspired with a druggist, a codefendant, to dispense the drug in the guise of prescriptions to patients, but really to addicts for the gratification of their appetite, and not for their cure, *held* for the jury under the evidence.

9. POISONS ☞9—HARRISON NARCOTIC ACT—PROSECUTION OF PHYSICIANS—QUESTIONS FOR JURY.

In prosecution of physicians for sale of drugs in violation of Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), whether dispensing of drug in each case was a dispensing of it by a physician to a patient, in which case no order form was required, or whether the form of prescription was used by defendants as an evasion of the law, and not in good faith, in which case the dispensing would be a sale, and an order form necessary to bring it within the law, *held* for the jury.

10. POISONS ☞9—HARRISON NARCOTIC ACT—CHARACTER OF DRUG USERS—KNOWLEDGE OF PHYSICIANS—QUESTIONS FOR JURY.

In prosecution of physicians for having violated the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), whether two persons were consumers of the drug and not patients of defendants, and whether defendants. and the druggist on whom they issued prescriptions, their codefendant, knew the true character in which such persons sought to procure drugs, *held* for the jury.

11. CRIMINAL LAW ☞1177—HARMLESS ERROR—ESTABLISHMENT OF ONE OF TWO COUNTS—SENTENCE.

If either count of indictments for having violated and having conspired to violate the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q) was established, defendants have no just complaint; the sentence imposed having been within the maximum prescribed for the offense charged in either count.·

12. POISONS ☞9—HARRISON NARCOTIC ACT—FAITH OF PHYSICIANS—SUBMISSION OF ISSUE.

In prosecution of physicians for having violated and conspired to violate the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), the trial court in his general charge properly submitted an issue as to the good faith of defendants in issuing their prescriptions to supposed patients, since the defendants could only protect themselves if the prescriptions were issued legitimately in their practice.

In Error to the District Court of the United States for the Western District of Texas; William R. Smith, Judge.

M. C. Melanson and Guillermo Q. Ellsworth were convicted of violations of and conspiracy to violate the Harrison Narcotic Act, and they bring error. Affirmed.

Volney M. Brown, of El Paso, Tex. (R. C. Walshe, C. M. Wilchar, and A. J. Harper, all of El Paso, Tex., on the brief), for plaintiffs in error.

R. E. Crawford and W. H. Fryer, Asst. U. S. Attys., both of El Paso, Tex.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The plaintiffs in error were convicted under two separate, but similar, indictments; each charging violations of section 2 of the Harrison Narcotic Act (Act Dec. 17, 1914, c. 1, 38 Stat. 786 [Comp. St. § 6287h]), and of a conspiracy to violate that section of the act, under section 37 of the Penal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. § 10201]), in separate counts. The trials were separate, but the questions presented by the appeals, with one exception, are the same.

Each defendant was charged with having conspired with one M. A. Dolan, who was a druggist, and who was a joint defendant in each indictment. The plaintiffs in error were each physicians. The gist of the conspiracy charged in the first count of each indictment was that the defendants were to write prescriptions for alleged patients, calling for morphine or cocaine, which were to be filled by their codefendant Dolan; all the defendants knowing that the alleged patients were not being treated by the physicians in the course of their legitimate practice, but were being furnished the drugs to appease their appetites for it. The first count in each indictment charged a conspiracy. The second count charged a joint sale by the physician and druggist without the use of the order form, required by the law to be used and filed in making sales, other than to patients in the regular practice of a physician on prescription, or by personal administration.

The plaintiffs in error first question the sufficiency of the indictments in two respects.

[1, 2] The first count is criticized because it contains no direct averment that cocaine is a derivative of coca leaves, and that morphine and heroin are salts or derivatives of opium. It is averred in the first count of each indictment that the respective defendants, at the time of the commission of the offense, knew that cocaine was a derivative of coca leaves, and that morphine and heroin were salts and derivatives of opium. It is difficult to see how they could know this to be a fact, unless it was a fact, and the averment that it was known by them to be a fact implies the averment that it was a fact. It certainly informs the defendants sufficiently of the charge against them, and, if an imperfect averment, is a harmless imperfection, carrying no consequences, in view of R. S. § 1025 (Comp. St. § 1691).

[3] The indictments are also criticized because they do not aver facts showing that the defendants did not come within any of the exceptions of the act. In the cases of Thurston v. United States, 241 Fed. 335, 154 C. C. A. 215, and Fyke v. United States, 254 Fed. 225, —— C. C. A. ——, we held that the provisions of section 8 of the act (Comp. St. § 6287n) made it unnecessary for the government either to aver or prove facts excluding defendants from the excepted classes.

[4, 5] It is objected that there should have been evidence introduced by the government that cocaine was a derivative of coca leaves, and that heroin and morphine were salts of opium. In the Ellsworth Case, the plaintiff's witness Will S. Wood testified as follows:

256 F.—50

"Morphine is an alkaloid of opium, and heroin is a derivative of opium, and cocaine is an alkaloid of coca leaves. Alkaloid means the principal agent of opium. Cocaine is a principal agent of coca leaves; it comes from coca leaves. Morphine and heroin both come from opium."

No transaction in heroin was relied upon by the plaintiff as a ground for conviction. The first count of the indictment alleged that—

"morphine was a salt and derivative of opium, and that heroin was a salt and derivative of opium, and that cocaine was a salt and derivative of coca leaves."

The second count contained this averment:

"Said morphine (referring to that charged to have been unlawfully sold) being a salt and derivative of opium."

We think the proof in the Ellsworth case was sufficient to show that the drugs were salts, and certainly derivatives, respectively, of coca leaves or opium. The proof as to this fact is not as specific in the Melanson case, but was sufficient to authorize submission of the issue to the jury, if, indeed, proof of such a scientific fact was required. The courts take judicial knowledge of the facts of chemistry contained in the United States Pharmacopœia.

[6] In the case of Melanson v. United States, objection is made to the action of the District Court in permitting the plaintiff to introduce in evidence certain order forms, used by the defendant Melanson for the procuring of morphine from a druggist other than the one with whom Melanson is charged with having conspired in the first count, and with having made a sale jointly, in the second count. A physician, under the terms of the law, may legally dispense the drug, either by prescription or by personal administration, in the legitimate course of his practice. The issue was presented under both counts as to whether the drug was dispensed in the legitimate course of Melanson's practice. The issue involved the question of the good faith of defendant as a physician in dispensing the drug. If dispensed in the legitimate course of his practice, the law was not violated. If the prescription was a cloak to cover a dispensing, not to aid a cure, but to furnish the drug to an addict to satisfy his appetite, the law was violated. The question depended upon the good or bad faith of the physician, and this involved his intent. Upon the question of intent, the quantities in which the defendant Melanson procured the drug reflected upon the question of his intent or good faith in dispensing it. The defendant Dolan entered a plea of guilty, and was not tried with Melanson. The issue of Melanson's intent being involved, the plaintiff was entitled to show on that issue, if it could, that the amounts of the drugs Melanson had procured, at or about the time of the alleged commission of the offense, from all sources, exceeded what would be required for his legitimate practice.

[7] The plaintiffs in error further complain that the court permitted the witnesses Dr. Jamison and Dr. Rogers, in the Melanson case, and Dr. Rogers, in the Ellsworth case, to testify that the prescribing of the drug under stated quantities and circumstances would not be in the course of a physician's regular practice. The witnesses qualified as medical experts, and were entitled, as such, to give opinion evidence.

The issue being whether or not the drug was dispensed in the legitimate course of defendants' practice as physicians, the evidence was germane to that issue; and, being competent expert testimony, the District Court properly permitted it to be introduced.

[8] Both plaintiffs in error contend that the evidence of the government was insufficient to show (1) a conspiracy under the first count; or (2) an illegal sale, because not made in response to an order on an order form, as charged in the second count. In the Ellsworth case the evidence showed that the defendant Ellsworth had issued in the period three months before the prosecution was instituted 700 prescriptions for the drugs, all of which had been filled by his codefendant Dolan, or his employés, and in quantities varying from 15 grains to 60 grains. The evidence also showed that prescriptions of the kind and quantity shown to have been issued by Ellsworth, and in the aggregate amount for the period, could not have been issued in the course of his professional practice legitimately. In the Melanson case, the evidence showed that the defendant Melanson had an office in the rear of his codefendant's drug store; that during a like period he had issued 900 prescriptions for the prohibited drugs, which had been filled by Dolan or his employés; and that no prescription for any other kind of drugs had been issued by Melanson to be filled by Dolan or his employés during that time. The evidence also showed that the prescriptions were of a character, and for an amount, that would not be issued by a physician in the course of his professional practice. This was sufficient evidence in each case for submission to the jury, upon the issue as to whether or not each of the defendants had conspired with Dolan to dispense the drug, in the guise of prescriptions to patients, but in fact to them as addicts, for the gratification of their appetite, and not for their cure.

[9-11] The plaintiffs in error also contend that the evidence was insufficient to show an illegal sale under the second counts of the two indictments. The contention is that, when the drug is prescribed by a physician, it is not required to be in pursuance of an order from the patient on an order form. Conceding this to be the law, it was for the jury to determine, in each case, whether the dispensing of the drug, in the one case to Clifford Frank, and in the other case to W. Banning, was a dispensing of it by a physician to a patient, in which case no order form was required, or whether the form of a prescription was used by the defendants as an evasion of the law, and not in good faith, in which case the dispensing would be a sale, and an order form would be necessary to bring it within the law. The amount of the drug prescribed in the Ellsworth case to Clifford Frank, and the frequency, amount, and circumstances attending the issuance of the prescription to Banning and others, and Banning's own testimony as to its intended use, and Melanson's probable knowledge thereof, made it a question for the jury to determine whether Frank and Banning were consumers of the drug, and not patients of defendant, and whether Melanson and Ellsworth and Dolan knew the true character in which they sought to procure it from defendants. In the latter event, the transaction would be a mere sale, and could be validated only if made upon receipt

of an order form from the respective purchasers. If either count of the indictment was established, the defendants have no just complaint, since the sentence imposed was within the maximum prescribed for the offense charged in either count.

[12] The plaintiffs in error also complain because the District Judge, in his general charge to the jury, submitted the issue as to the good faith of the defendants in issuing the prescriptions to the supposed patients. We think this issue was a pertinent one. The defendants could only protect themselves, under the act, if the prescriptions were issued in the legitimate course of their professional practice. The law does not mean by this to immunize those who use the form of the relation of physician and patient as a mere method to avoid the law's penalties, when in fact they are dispensing the drug, not to cure a patient, but to satisfy the craving of an addict, who bears no such relation to them. If the act were given that construction, it would be valueless to remedy the evil aimed at, since physicians could register, and with impunity furnish the drug, through pretended prescriptions, in collusion with registered druggists.

We find no error in the records, and the judgment in each case is affirmed.