WALLACE v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917.)

No. 2336.

1. CONSPIRACY ☞43(6)—POISONS ☞4—INDICTMENT—SALE OF OPIUM.

Harrison Drug Act Dec. 17, 1914, c. 1, § 1, 38 Stat. 785 (Comp. St. 1916, § 6287g), requires any person proposing to handle opium or coca leaves, or any compound or derivatives thereof, to register with the collector of internal revenue of the district his name or style, place of business, and place or places where such business is to be carried on, defining the place of business as the office, or, if none, then the residence, of such person. An indictment returned in the First district of Illinois charged that accused and another conspired to violate the act, and that accused aided and abetted such person, who was not registered with, and had not paid the tax to, the collector of internal revenue for that district, to dispose of the drugs. *Held*, that the act does not provide that one intending to deal in such drugs shall register at his place of business, but that he shall register at the place where such business is to be carried on, the statement of such person's place of business being for information; and hence the indictment was not defective in failing to allege that such person had not registered at his place of business, it alleging that he had not registered at the place where the drugs were disposed of.

2. CONSPIRACY ☞43(6)—INDICTMENT AND INFORMATION—SUFFICIENCY.

An indictment charging that accused and another, who was not registered in accordance with Harrison Drug Act, entered into, at Chicago, a conspiracy whereby accused's coconspirator was to dispose of drugs in violation of the act, and which alleged that he did dispose of such drugs, is sufficient to charge the conspiracy to sell such drugs within the First district of Illinois, within which accused's coconspirator was alleged not to have been registered; Chicago being in that district.

3. POISONS ☞9—SALE OF OPIUM—INDICTMENT—EXEMPTIONS.

Under the Harrison Drug Act, which excepts certain persons, and provides in section 8 (Comp. St. 1916, § 6287n) that it shall not be necessary

to negative any such exemptions in any complaint, information, or indictment, or writ or other proceeding, laid or brought under the act, an indictment charging a violation of the act need not negative the exemptions contained therein; the provisions of section 8 being applicable to all exemptions contained in the act, and such exemptions being separate from the other provisions of the act.

4. CONSPIRACY ⚖➝43(4)—INDICTMENT—SUFFICIENCY.

An indictment, charging that accused conspired with another to violate the Harrison Drug Act, alleged that accused's coconspirator, not being registered, unlawfully, knowingly, and feloniously did sell and dispose of prohibited drugs, and that accused unlawfully and knowingly did aid his coconspirator, sufficiently avers accused's knowledge of the unlawfulness of his coconspirator's act.

5. CRIMINAL LAW ⚖➝678(1)—PROSECUTION—ELECTION.

Under Rev. St. § 1024 (Comp. St. 1916, § 1690), declaring that when there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes which may be properly joined, instead of having several indictments, the whole may be joined in one indictment in separate counts, the government cannot, in a prosecution for conspiring to violate and for violating the Harrison Drug Act, be required at the close of its case to elect on which of the acts conviction would be sought; the several charges properly being joined in one indictment.

6. CRIMINAL LAW ⚖➝564(3)—VENUE—EVIDENCE.

Venue, like any other fact, may be shown by evidence, direct, indirect, or circumstantial.

7. CRIMINAL LAW ⚖➝564(1)—TRIAL—VENUE.

In a prosecution for conspiring to violate and violating the Harrison Drug Act, evidence held sufficient to establish the venue in the district laid in the indictment.

8. CONSPIRACY ⚖➝45—VIOLATION OF STATUTE—EVIDENCE—ADMISSIBILITY.

Where accused was charged with conspiring with another, who was unregistered, to violate and violating the Harrison Drug Act, evidence that accused's coconspirator had previously been prosecuted for violating the state drug acts, and that accused assisted him in obtaining bail and preparing his defense, is admissible to show the relations between the parties and the purposes of their acts, shown to have occurred since the Harrison Act went into effect.

9. CRIMINAL LAW ⚖➝507(1)—POISONS ⚖➝4—EVIDENCE—ACCOMPLICES—POSSESSION OF DRUGS.

Under the Harrison Drug Act, section 1 of which requires persons proposing to handle opium or coca leaves or their derivatives to register and pay the tax, and section 8 of which penalizes the possession of drugs by persons not having registered and paid the tax, one having possession of such drugs for his own use does not fall within the inhibition of the act, and hence a witness against accused, who purchased such drugs from accused's coconspirator, cannot be deemed guilty of an offense and an accomplice, so as to warrant a charge that the jury should scrutinize his testimony as that of an accomplice.

10. CRIMINAL LAW ⚖➝780(1)—TRIAL—ACCOMPLICE'S TESTIMONY.

There is no absolute rule of law preventing convictions on the testimony of accomplices, if juries believe them, and while it is better practice, where such testimony is relied on, for the court to direct attention to the complicity of witnesses, error cannot be predicated on refusal to so charge the jury.

11. CRIMINAL LAW ⚖➝510—EVIDENCE—ACCOMPLICE'S TESTIMONY.

A conviction may be had on the testimony of accomplices alone.

---

⚖➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**12. CRIMINAL LAW ☞658—TRIAL—CONDUCT OF COURT.**

In a criminal prosecution, where a witness, who had previously made contradictory statements under oath, on trial denied knowledge of facts tending to incriminate accused, the court was warranted in committing such witness to the custody of the marshal, and it was proper to allow the witness to subsequently change his testimony; the court cautioning the jury to examine carefully the conflicting stories.

**13. CRIMINAL LAW ☞351(8)—EVIDENCE—ADMISSIBILITY.**

A witness, who had previously made statements under oath connecting accused with the offense on trial, first denied knowledge of any such facts, but, having been committed to the custody of the marshal, testified to them, and that accused had induced him to deny such knowledge. *Held*, that the testimony tending to implicate accused in the suppression of the evidence was admissible, and could be considered by the jury.

**14. POISONS ☞9—OFFENSES—EVIDENCE—SUFFICIENCY.**

In a prosecution for violating the Harrison Drug Act, evidence *held* sufficient to sustain the conviction.

**15. CRIMINAL LAW ☞1147—APPEAL—DISCRETION OF COURT—PUNISHMENT.**

The appellate court cannot substitute its own discretion for that of the District Court, and, though believing that lighter punishments than those imposed for violation of the Harrison Drug Act would have vindicated the law, the punishment imposed cannot be treated as excessive.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

William E. Wallace was convicted of a violation of the Harrison Drug Act, and he brings error. Affirmed.

Plaintiff in error was convicted under an indictment charging violation of the so-called Harrison Drug Act passed December 17, 1914, and by its terms effective March 1, 1915. Of the ten counts of the indictment, Nos. 1 and 2 charge plaintiff in error Wallace and one Davis with conspiracy to commit an offense against the United States by violating said act; count 1 charging the intended offense to be possession of such drugs by Davis, a person who sold and gave away the drugs, and not being registered with, and not having paid the tax provided in the act to, the collector of internal revenue for the First district of Illinois, and count 2 an intended violation of the act through sales of such drugs to be made by Davis, he not being so registered or having paid the tax. Counts 3 and 5 charge Davis with violating the act by unlawfully having in his possession the drugs, and counts 4, 5, 6, 7, 9, and 10 charge violation by Davis in unlawfully selling or giving away the drug, and in counts 3 to 10 Wallace is charged with having aided and abetted Davis in doing the unlawful acts charged against Davis in these counts, Davis not being so registered and not having paid the tax.

Wallace alone was tried, Davis having pleaded guilty. The jury found Wallace guilty under counts 2, 6, 9, and 10, and not guilty under the others. Wallace was sentenced to two years' imprisonment and $10,000 fine under count 2, and 5 years under each of counts 6, 9, and 10, the several terms of imprisonment to be concurrently served.

Section 1 of the act, which it is charged the defendants violated and conspired to violate, is in its material parts as follows: "That on and after the first day of March, nineteen hundred and fifteen, every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away opium or coca leaves or any compound, manufacture, salt, derivative, or preparation thereof, shall register with the collector of internal revenue of the district his name or style, place of business, and place or places where such business is to be carried on: Provided, that the office, or if none, then the residence of any person shall be considered for the purposes of this act to be his place of business. At the time of such registry and on or before

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the first day of July, annually thereafter, every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away any of the aforesaid drugs shall pay to the said collector a special tax at the rate of $1 per annum." (Certain persons are exempted.) "It shall be unlawful for any person required to register under the terms of this act to produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away any of the aforesaid drugs without having registered and paid the special tax provided for in this section. * * * That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall make all needful rules and regulations for carrying the provisions of this act into effect."

Sections 2, 3, and 5 make detailed provision for handling the drugs by persons registered, for making record of drugs received, and for sale or barter of same only in pursuance of a written order on blank forms for which provision is made, and for preservation of such orders and the accessibility thereof to inspection by officials of the Treasury Department, as well as to state and municipal officials who are charged with enforcement of laws or ordinances thereof regulating sale and distribution of such drugs. Section 4 makes it unlawful for any person not registered to ship or carry any of these drugs from one state to another, certain exceptions being enumerated. Section 9 prescribes that any person violating the act shall be fined not more than $2,000, or imprisoned not more than 5 years, or both.

Numerous errors are alleged. Those which we deem important will be stated with the discussion of them in the opinion.

William A. Morrow, of Chicago, Ill., for plaintiff in error.

Charles F. Clyne and Benjamin P. Epstein, both of Chicago, Ill., for the United States.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] 1. As to each of the counts in the indictment it is contended that because it is not alleged that Davis had his office or residence in the first internal revenue district of Illinois and the allegation of his nonregistry and nonpayment of the tax is only as to said First district, the indictment does not sufficiently allege Davis' nonregistry and nonpayment of the tax. The argument is that, for anything to the contrary appearing in the indictment, Davis might have been registered in some other district, and would therefore have had the right under the act to handle the drugs within the First district of Illinois, without registering with, or paying the tax to, the collector of internal revenue therein. Does registry and payment of the tax in one internal revenue district of the United States entitle the registered person under such registry alone to handle the drugs in all other revenue districts in the United States as he may do in the district of his registry?

Section 1 requires a person proposing to handle the drugs to register "with the collector of internal revenue of the district his name or style, place of business, and place or places where such business is to be carried on," and it defines the place of business to be "the office, or if none, then the residence" of the person. Distinction is thus made in the act between the "place of business" and the "place where such business is to be carried on." The act defines the first in prescribing that it shall be considered the office, if any, and, if none, then the residence, of the applicant for registry. But evidently the place where the business is to be carried on may be anywhere in the United States,

and may be more than one place, as indicated by the use of the words "place" or "places." But the act does not provide that his place of business—i. e., his office or residence—shall be the place where he is required to register. It prescribes in effect that he shall state his place of business (so defined to be his office or residence) by way of information, doubtless for the more certain identification of the applicant for registry and to facilitate official supervision, and tracing of the drugs. For instance, if his office (his place of business, if any, and, if none, his residence) is in New York, unless he intends to carry on the business in New York, he need not register there; but if he desires to carry on the business of selling the drugs in the First district of Illinois, he must register in the First district, and when registering there he registers his place of business as New York, and will then further register the place or places wherein he expects to transact business in Chicago, and in such other places, if any, in which he intends to handle the drugs. But so registering these facts in the First district of Illinois does not entitle him to deal in such drugs in the various places other than said First district, which he may thus enumerate. In order to make sales in any of the other districts which may be so enumerated, the applicant must there register and pay his tax in such district, wholly regardless of whether within any district in which he registers he actually has an office or residence. If, therefore, without registering and paying tax in the First district of Illinois, Davis therein actually dealt in, sold, or gave away the drugs, he was carrying on such business in said First district contrary to the provisions of the act, even though he might have registered and paid tax in some other district. It follows that, with respect to the allegations of nonregistry and nonpayment of the tax, the indictment is sufficient.

[2] 2. It is urged that the conspiracy alleged in count 2 fails to charge a conspiracy to unlawfully sell the drugs within the First district of Illinois, within which alone Davis' nonregistry is alleged. The count charges the conspiracy to have been formed at Chicago, which is within such First district, and that in pursuance of the conspiracy Davis did deliver, sell, and give away drugs at Chicago to the various persons alleged in the different overt acts set forth in the count. Under the reasoning and conclusion of the Supreme Court in Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614, we hold that count 2 sufficiently charges a conspiracy to commit at Chicago the alleged offense.

[3] 3. Another objection urged to the indictment is that the counts do not negative the exemptions from the operation of the act as therein created in favor of certain persons. The exemptions referred to consist in the enumeration of certain classes of persons who are excluded from the general prohibition of the act, which the act clearly and completely sets forth wholly apart from the specified exemptions. The rule applicable to such cases is stated by the Supreme Court in United States v. Cook, 17 Wall. 168, 173, 21 L. Ed. 538, in these words:

"If the language of the section defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception, the

pleader may safely omit any such reference, as the matter contained in the exception is matter of defense and must be shown by the accused."

The same rule was recently applied by this court in Grand Trunk Ry. Co. v. United States, 229 Fed. 116, 143 C. C. A. 392.

Section 8 of the act, which makes it unlawful without registry to have possession of the drugs, and which likewise specifies certain ex- cepted persons, has this proviso:

"Provided, further, that it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment or other writ or proceeding laid or brought under this act; and the burden of proof of any such exemption shall be upon the defendant."

It is claimed this has reference only to the exemptions specified in section 8. This might be so were it not for the words "any complaint, * * * indictment, etc., brought under this act," which indicate the intended application of the proviso to the entire act. Our conclusion is that under the stated rule of construction, as well as under this proviso, it was unnecessary in the indictment to negative the statutory exceptions.

[4] 4. Insufficiency of counts 6, 9, and 10 is urged, because in the allegations therein against Wallace, of aiding and abetting in the unlawful sales charged in these counts to have been made by Davis, it is not stated that Wallace knew that Davis had not registered or paid the tax. The counts charge that Davis unlawfully, knowingly, and feloniously did sell, etc., not having registered or paid the tax, and that Wallace "unlawfully and knowingly did aid and abet said John Davis unlawfully, knowingly, and feloniously to sell, * * * as in this count aforesaid." This question was dealt with in Coffin v. United States, 156 U. S. 432, 439, 15 Sup. Ct. 394, 39 L. Ed. 481, where similar language was held to be a sufficient allegation of the alleged abettor's knowledge of the unlawful character of the principal's act.

[5] 5. Complaint is made of the denying of motion for defendant, at the close of government's case, to require the government to elect upon which of the counts conviction would be sought. Section 1024, Rev. Stat. (Comp. St. 1916, § 1690), is as follows:

"When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

This indictment is within the purview of that section, and election was properly denied. Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208; Rooney v. United States, 203 Fed. 928, 122 C. C. A. 230; McGregor v. United States, 134 Fed. 187, 69 C. C. A. 477.

[6, 7] 6. It is earnestly contended for plaintiff in error that the record fails to disclose any proof of the venue and that therefore there should be a reversal of the judgment. Careful perusal of the record reveals that no witness testified in so many words that the alleged conspiring and selling and giving away occurred within the Northern dis

trict of Illinois. While direct testimony of such fact (in most cases easily available) is desirable for greater certainty, yet venue, like any other fact, may be shown by evidence, direct, indirect or circumstantial. On cross-examination Davis was specifically asked the various places in Chicago where he had lived, and he named different streets which in his own testimony, as well as in the testimony of other persons, were referred to in connection with the acts charged, one of the streets being the same one on which it was testified Wallace's drug store was located; indeed, Davis testified that one of the places where he lived in Chicago was in such close proximity to Wallace's drug store that from it he could see into the store, and that in the telephone booth of that store, and sometimes in the cellar, Wallace would pass to Davis cocaine which Davis was to dispose of. Defendant's character witness Whitaker testified he knew Wallace was in the drug business in Chicago, having visited him at his place of business at Thirty-Ninth and State streets. Taylor testified to working for the city of Chicago, and to getting packages of drugs from Wallace's drug store on his way to work. With the various streets thus identified by some evidence as being in the city of Chicago, it was not necessary, in order to prove the venue, that each of the witnesses who thereafter referred to the same streets in connection with incriminating acts occurring thereon must again identify the streets as being in Chicago. The record fully warranted the jury in finding that the venue of the offense was proved in Chicago, which is in the First revenue district of Illinois.

[8] 7. Evidence was offered by the government, and against objection was received, to the effect that prior to March 1, 1915, when the Harrison Drug Act took effect, Davis had been convicted in the state courts of violating state laws against the sale of such drugs, that he had then received the drugs from Wallace, and that Wallace assisted him in the matter of obtaining bail and in defending him against those charges. Various assignments of error attack the competency of such evidence. We think the evidence was competent as bearing on the relations between Wallace and Davis, and on their state of mind and motive in the handling of such drugs after March 1st. Heike v. United States, 227 U. S. 131, 33 Sup. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128; Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278; Thompson v. United States, 144 Fed. 14, 75 C. C. A. 172, 7 Ann. Cas. 62. In the court's charge the jury was admonished that the occurrences prior to March 1st had no bearing upon the case, except by way of indicating the relations between the parties, and the purposes of their acts shown to have occurred on and after March 1st.

[9] 8. The court having charged the jury that Davis was an accomplice, and cautioned them with respect to the credit to be given his testimony, defendant requested a similar charge respecting witnesses Gibson, Foster, Crawford, Taylor, and Moran, that "because of the fact that all were found in possession of the drug, which was in violation of the Harrison Act, and which made their offense intimately interwoven with the offense which it is alleged Wallace committed, and for that reason they are accomplices," and error is assigned for failure to charge the jury accordingly. All of those named were drug

addicts, whose possession of the drug as supplied by Davis appears to have been for their own use, save only that Taylor and Foster did not personally use all of the cocaine which they received through Davis. Section 8 of the act is directed against and penalizes possession of the drug by persons not having registered and paid the tax. But the Supreme Court held this section does not have reference to persons other than those included within the provisions of section 1, and that mere possession by one for his own use does not fall within the inhibition of the act. United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061. From this it would follow that possession of the drug by these witnesses for their own use would not constitute them violators of the law, and they could not for such reason alone be considered accomplices.

[10] But, if it were conceded that all of them were accomplices, there is no absolute duty on the court to give to the jury the usual charge cautioning them to exercise circumspection with respect to the evidence of accomplices, so that failure to give it would of itself be reversible error. Where testimony of accomplices is relied on by the government, it is recognized as the better practice for the court in its charge to direct attention to the complicity of the witnesses, and to duly caution the jury respecting such testimony. But error is not predicable merely upon failure to so charge the jury. In its most recent pronouncement upon that subject the Supreme Court said in Diggs and Caminetti v. United States (Jan. 15, 1917) 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442:

"It is urged as a further ground of reversal of the judgments below that the trial court did not instruct the jury that the testimony of the two girls was that of accomplices, and to be received with great caution and believed only when corroborated by other testimony adduced in the case. We agree with the Circuit Court of Appeals that the requests in the form made should not have been given. In Holmgren v. United States, 217 U. S. 509 [30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778], this court refused to reverse a judgment for failure to give an instruction of this general character, while saying it was the better practice for courts to caution juries against too much reliance upon the testimony of accomplices and to require corroborating testimony before giving credence to such evidence. While this is so, there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them. 1 Bishop's Criminal Procedure (2d Ed.) § 1081, and cases cited in the note."

[11] 9. The last citation will dispose also of those assignments of error which are predicated upon the assumption that as to Wallace's participation in the alleged crime there was no corroboration of the testimony of Davis and Taylor, accomplices, by whose testimony alone it is claimed the complicity of Wallace was shown, and that, unless there is a corroboration of the testimony in this regard of these two, Wallace's guilty participation has not been established. The rule is, as above stated, that the testimony of accomplices will, if otherwise sufficient, alone support a conviction provided the jury believes it. Diggs and Caminetti v. United States, supra; United States v. Giuliani (D. C.) 147 Fed. 598; Ahearn v. United States, 158 Fed. 606, 85 C. C. A. 428; Wigmore on Evidence, § 2056.

[12-14] 10. It is contended that the record discloses no substan-

tial evidence showing Wallace guilty beyond reasonable doubt. If the jury believed Davis' testimony, they were warranted in finding from it that Wallace, knowing Davis to be a man who, before the passage of the Harrison Act, was extensively engaged in illicit traffic in narcotic drugs through disposing of them to drug addicts, had an understanding with Davis after the act was passed whereby, for mutual profit, they would violate the provisions of the act through Davis unlawfully selling to drug addicts the drugs supplied by Wallace; that, pursuant to such understanding, Davis made sales of cocaine received from Wallace, to the persons named in the counts under which conviction was had; that Davis, on receiving the price, paid Wallace his agreed share thereof—Davis, to the knowledge of Wallace being unregistered, and not having paid the tax, as required by the act, in the First Internal revenue district of Illinois, within which, as contemplated, the sales were made, both well knowing that, if Davis complied with the act, the sales to these unfortunates would be seriously hampered, if, indeed, not practically barred.

We cannot say that Davis' testimony is of itself so unreasonable and improbable that a jury was not justified in believing it. It is corroborated by Taylor, who testified to long acquaintance with Wallace, who was instrumental in procuring employment for the witness with the city of Chicago; that he frequently purchased such drugs from Wallace prior to the Harrison Act, and that since the act became effective, he had occasionally seen Davis in Wallace's store, and that one night the witness carried to Davis a package which Wallace gave him, and on another night he and Wallace delivered a package to Davis, both deliveries being at places distant from the store, and under circumstances indicating intended secrecy of the transactions; and that Davis thus received the packages, containing, as Davis testified, large quantities of cocaine, which he "planted" in various places for future sale.

As to this witness complaint is made that on the trial he first testified denying all knowledge of any such transactions after March 1, 1915, and that when it appeared he had made prior statements under oath of such subsequent transactions, the court ordered him in custody of the marshal, and that the next morning he testified as above stated in regard to these subsequent transactions, implicating Wallace in an attempt to have the witness omit any reference to them. From what is disclosed in the record, the action of the court respecting this witness was not unwarranted. The jury was cautioned by the court to examine carefully the conflicting stories told by this witness, and to determine the truth from all the evidence before them. The testimony that Wallace induced him to falsely deny these subsequent transactions was unquestionably prejudicial to the defense. But not more so in this than in any case where it is testified that a party to a transaction has attempted to suppress evidence bearing thereon. Evidence of such attempt is always admissible against the party making it, and is to be considered by the jury with all the other evidence, in determining whether or not that is true which was so sought to be suppressed or concealed. Wigmore on Evidence, § 278.

It cannot be said that the record is wholly barren of corroboration

of these witnesses. Hauber, Moran, Johnson, and Foster testified to seeing Davis in Wallace's drug store at various times after March 1, 1915. On one occasion in April, Johnson and Foster wanted an ounce of cocaine, which Davis told them would cost $21, and they watched him go into Wallace's store, coming back with a bottle containing the drug, which he gave them on payment of the money. From other witnesses it appeared that before March 1st Davis had been convicted at least twice of selling such drugs in violation of the laws of Illinois, which drugs he had procured from Wallace, and that Wallace, on learning of his arrest, procured a bond for him and advanced him money to pay for the bond and for his defense against the charge, from all of which the conclusion is warranted that Wallace was no stranger to schemes for the unlawful disposition of such drugs by Davis, and that Davis was during such time a frequenter of Wallace's store, with apparently no business there except in connection with this surreptitious and unlawful output of narcotic drugs.

There was practically no evidence offered to refute the testimony of Davis and Taylor. The defense consisted substantially in the testimony of several witnesses to Davis' bad reputation for truth, some others who testified to Wallace's previous good character, and two medical experts who testified that "dope fiends," on becoming addicted to the habitual use of narcotic drugs, have no conception of truth, and that their testimony is utterly unreliable—Davis, Taylor, Johnson, Foster, Gibson, Doss, E. B. Davis, Crawford, Moran, and Hauber, all witnesses admitting they were habitual users of cocaine or opium. It is upon such facts, personal to the witnesses, rather than upon any inherent weakness of their testimony incriminating Wallace, that reversal is asked on the ground of want of substantial evidence to show guilt.

However useful and beneficial to mankind the proper and scientific employment of such drugs has proved to be, if part of the price paid for their habitual use is the blunting or distortion of the moral sense, whereby the addict is less likely to comprehend or to state the truth, this fact, if appearing in evidence, is one from which, with all the other facts and circumstances appearing, the jury must determine where and what the truth is. If witnesses to prove unlawful sales of narcotic drugs are as a matter of law to be disbelieved and their testimony discarded from the fact alone that they are numbered among the unfortunate victims of the drug habit, it is readily perceivable how laws such as the act in question, having for their real object the due regulation of the handling of such drugs, would in many instances become practically inoperative through want of evidence to enforce them. While the necessities of a case, and the desirability of enforcing the law, must not in any event permit conviction upon evidence less conclusive than such as shows guilt beyond reasonable doubt, a due degree of caution to avoid such outcome does not demand absolute rejection of the testimony of witnesses solely because the drug habit may tend to impair their perceptions, or to stimulate or dull the faculty for accurate observation, recollection, or relation. Where the witnesses relied on for conviction are such as those here indicated, the jury must consider everything which the evidence re-

veals bearing upon the truth or untruth of their testimony, and as to such witnesses, as with all others, should credit what under all the circumstances appearing they believe, and reject what they disbelieve. Nothing here appears from which it may be inferred, or even suspected, that the jury did not so test these witnesses and this evidence, and we cannot conclude from the record that it discloses no substantial evidence upon which, the jury might predicate the guilt of plaintiff in error.

[15] 11. Respecting the assignment of error challenging the sentence upon the ground that it is excessive, while it seems that a smaller fine and briefer term of imprisonment might sufficiently have penalized, the transgression and vindicated the law, we may not substitute our own discretion for that of the District Court; and under all the circumstances we cannot find there was abuse of that court's discretion in this regard.

Finding no substantial error, the judgment is affirmed.