### ROTHMAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 16, 1920.)

No. 35.

**1. Indictment and information ⊚�439111(1)—Indictment under Narcotic Act need not negative exceptions.**

The second proviso in Harrison Narcotic Act, § 8 (Comp. St. § 6287n), that "it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this act, and the burden of proof of any such exemption shall be upon the defendant," *held* to apply to the entire act, and not merely to the exemptions specified in that section.

**2. Criminal law ⬅841—Exceptions to instructions must be taken before retirement of jury.**

Exceptions to the charge of the court must be taken before retirement of the jury.

**3. Courts ⬅356—Federal courts not governed by state practice as to bill of exceptions.**

Conformity Act, § 5 (Comp. St. § 1537), has no application to bills of exception, and the practice of the federal courts with respect to such bills is not governed by that of the state courts.

**4. Criminal law ⬅37—Defense of entrapment.**

A government detective, suspecting that a person is engaged in an unlawful business, may seek information directly from him under an assumed name, and if such person responds, and violates the law, he cannot set up as a defense that he would not have done so if the person approaching him had not been an officer.

**5. Statutes ⬅219—Acting on an erroneous construction of statute by Treasury Department not a defense.**

Where the Supreme Court has authoritatively construed a statute, it is not error for a trial court to refuse an instruction based on a prior erroneous construction by the Treasury Department.

**6. Conspiracy ⬅27—Participation in substantive offense not essential to conviction.**

Under an indictment charging an offense and also a conspiracy to commit the same, acquittal of one defendant of the substantive offense does not preclude his conviction on the conspiracy count.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Solomon Rothman, Louis Cohen, and William Cohen. Judgment of conviction, and defendants bring error. Affirmed.

The plaintiffs in error, who were defendants below, will be hereinafter referred to as defendants. The defendants and one Jacob Weinberg were indicted on September 17, 1918, for unlawfully selling heroin and for conspiracy respecting such sale. They pleaded not guilty, and were put on trial on July 21, 1919. The jury brought in a verdict of guilty on August 1, 1919, against the two Cohens and Rothman, and acquitted Weinberg. Sentence was pronounced against the defendants on August 14, 1919, and each was sentenced to imprisonment for 2 years in the penitentiary at Atlanta. Bail was fixed for each in the sum of $7,500, and for 15 months they have been out on bail pending this appeal, which was heard in this court on October 15, 1920. There thus appears excessive delay in bringing these men to trial after their indictment, as well as in bringing the case to a final determination in this court after their conviction. But circumstances explained to the court seemed to make the delay inevitable.

Louis Marshall and C. G. F. Wahle, both of New York City, for plaintiffs in error.

Francis G. Caffey, U. S. Atty., of New York City (Peter B. Olney, Jr., Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The defendants have been indicted under what is known as the Harrison Act, being the Act of December 17, 1914, 38 Stat. pt. 1, c. 1, p. 785

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(Comp. St. §§ 6287g–6287q). That act was amended as to section 1 by the Act of February 24, 1919, c. 18, § 1006, 40 Stat. p. 1130 (Comp. St. Ann. Supp. 1919, § 6287g). The amendatory act, having been passed after the acts complained of were committed is not involved herein.

The original act provides for the registration of all persons who produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away opium or coca leaves, their salts, derivatives, or preparations, and for other purposes. The act makes it an offense punishable by a fine of not more than $2,000 or by imprisonment for not more than five years, or both, to deal in the drugs described therein contrary to the provisions of the act. The indictment also charges the defendants with a conspiracy to violate the said act, contrary to section 37 of the Criminal Code (Comp. St. § 10201). The crime charged is the crime created by section 2 of the act (section 6287h), and so far as it is material to the present inquiry it is found in the margin.[1]

The defendant Rothman is a physician. Louis Cohen was the owner of a pharmacy, and his brother William had been in partnership with Louis, but had retired therefrom. The claim was that the Cohens had filled the physician's prescriptions with knowledge of the fact that the physician was writing the prescriptions, not in good faith, and not with the intention of treating those to whom he issued them for the purpose of curing them, but in order that such persons might circumvent the law.

[1] The first objection to be considered is one which goes to the sufficiency of the indictment. It is said that the indictment fails to charge a crime within the terms of the act; that as the crime is a statutory one, and the statute defining the offense contains certain exceptions, the rules of good pleading require that an indictment founded

---

[1] "It shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. * * * Nothing contained in this section shall apply—

"(a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under this act in the course of his professional practice only. * * *

"(b) To the sale, dispensing, or distribution of any of the aforesaid drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist, or veterinary surgeon registered under this act. * * *

"(d) To the sale, barter, exchange, or giving away of any of the aforesaid drugs to any officer of the United States government or of any state, territorial, district, county, or municipal or insular government lawfully engaged in making purchases thereof for the various departments of the Army and Navy, the Public Health Service, and for government, state, territorial, district, county, or municipal or insular hospitals or prisons.

"The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall cause suitable forms to be prepared for the purposes above mentioned, and shall cause the same to be distributed to collectors of internal revenue for sale by them to those persons who shall have registered and paid the special tax as required by section one of this act in their districts, respectively. * * * "

upon the statute should negative the exceptions. The exceptions are in section 2 which have been already set forth herein. In this connection it is necessary to consider section 8 (section 6287n) which appears in the margin.[2]

It will be observed that sections 2 and 8 define different offenses, and that the exceptions in section 2 are exceptions to certain prescriptions, while in section 8 they relate to certain classes of persons; and the question arises whether the second proviso in section 8 relates merely to the exceptions in that section or extends as well to the exceptions in section 2. This question came before the Circuit Court of Appeals in the Seventh Circuit in 1917 in Wallace v. United States, 243 Fed. 300, 304, 156 C. C. A. 80, and it was held that this proviso was intended to apply to all exceptions in the act, and not merely to those found in section 8; the conclusions arrived at being based on the words it shall not be necessary to negative the exemptions "in any * * * indictment * * * brought under this act," which the court said indicated that the proviso was intended to apply to the entire act. The same question has been several times since before the Circuit Court of Appeals in the Fifth Circuit and a similar ruling has been made. Fyke v. United States, 254 Fed. 225, 228, 165 C. C. A. 513; Melanson v. United States, 256 Fed. 783, 785, 168 C. C. A. 129; Oakshette v. United States, 260 Fed. 830, 831, 171 C. C. A. 556. We shall follow the decisions referred to and hold that the indictment was not invalidated by the omission complained of.

[2] It appears that the persons to whom, upon this record, the prescriptions were given, were two government agents, and it is said that these men sought to entrap the defendants by means of fraud into the commission of a crime, and that on this account the government is estopped from urging a conviction on such premises. The jury was instructed on this subject as follows:

"Now, I will charge you, gentlemen, that some point has been made that Hanake was an internal revenue agent; that Devine was also an internal revenue agent; that they went to the doctor and to the druggist for the purpose of trapping him. I charge you that, if the officers of the government

---

[2] Section 8. "That it shall be unlawful for any person not registered under the provisions of this act, and who has not paid the special tax provided for by this act, to have in his possession or under his control any of the aforesaid drugs; and such possession or control shall be presumptive evidence of a violation of this section, and also of a violation of the provisions of section one of this act: Provided, that this section shall not apply to any employee of a registered person, or to a nurse under the supervision of a physician, dentist, or veterinary surgeon registered under this act, having such possession or control by virtue of his employment or occupation and not on his own account; or to the possession of any of the aforesaid drugs which has or have been prescribed in good faith by a physician, dentist, or veterinary surgeon registered under this act; or to any United States, state, county, municipal, district, territorial, or insular officer or official who has possession of any said drugs, by reason of his official duties, or to a warehouseman holding possession for a person registered and who has paid the taxes under this act; or to common carriers engaged in transporting such drugs: Provided further, that it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this act; and the burden of proof of any such exemption shall be upon the defendant."

believe these defendants were violating the law, it is not only legal, but commendable, that they should endeavor to find it out in just the way they did, and if the druggist and the doctor violated the law by selling to these agents of the government, they are just as much guilty, and your verdict will be based on those transactions just the same, as if they had sold to persons having no connection with the government at all."

The giving of this instruction is the fifty-fourth assignment of error. We do not, however, find that at the time the charge was given any exception was taken to that part of it which relates to the above instruction. After the verdict had been returned, when defendants appeared for sentence two weeks thereafter, their counsel stated that he desired to except to that part of the charge and the court stated that he would allow the exception. This was too late. No exception to a charge after the jury has retired can be considered. Before the charge was given requests to charge were submitted to the court which cover 52 printed pages of the record. We do not feel called upon to examine them, our attention not having been specifically directed to them.

An exception was taken to the refusal to charge the fifty-sixth request, but no other exception was taken to any refusal of the other requests. That exception is properly before us and will be subsequently considered.

[3] There can be no possible excuse for presenting to the trial judge such a volume of requests to charge as we find in this record, and it is difficult for us to see why all these requests should be incorporated into what purports to be a bill of exceptions, but which cannot possibly be so regarded. Under the federal practice this was not only unnecessary, but improper. We ought to add that the counsel for defendants who argued the case in this court did not try it in the court below and is not responsible for the requests to charge or for the bill of exceptions in which those requests appear. We also ought to say that bills of exceptions in the federal courts are not governed by the rules governing appeals in the courts of record of the state within which the federal courts are held. The Act of Conformity of June 1, 1872, c. 255, § 5 (Comp. St. § 1537) has no application to bills of exceptions. In re Chateaugay Ore & Iron Co., 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508; Buessel v. United States, 258 Fed. 811, 819, 170 C. C. A. 105.

[4] But in view of the Act of February 26, 1919, c. 48, § 269, 40 Stat. p. 1181 (Comp. St. Ann. Supp. 1919, § 1246), we will say concerning the instructions objected to in this court that the contention of the defendant's counsel is disposed of by what was laid down in Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550. It was there decided that when a government detective, suspecting that a person is engaged in an unlawful business seeks information under an assumed name directly from him, and that person responds thereto, violating a law of the United States, he cannot, when indicted for the offense, set up that he would not have violated the law, if the inquiry had not been made of him by the government official. A number of cases in the federal courts in support of the doctrine are cited in the opinion. See, also, Andrews v. United States, 162 U. S.

420, 16 Sup. Ct. 798, 40 L. Ed. 1023; United States v. Lynch (D. C.) 256 Fed. 983.

[5] The court was requested (the fifty-sixth request) to charge as follows:

"The defendants are to be judged by the interpretation accepted by the constitutional authorities and given to the Harrison Narcotic Law in the years 1917 and 1918, and if the defendants, in the conduct of their business, complied with the decisions and orders of the Treasury Department through the Bureau of Internal Revenue, as the same were issued in the years 1917 and 1918, under the provisions of the Harrison Narcotic Law, then these defendants must be acquitted. They cannot· be judged by an interpretation of the law after the filing of this indictment, which reverses or is contrary to that adopted and duly promulgated during the times mentioned in the indictment."–

The material part of Treasury Decision No. 2200, which is the interpretation alluded to in the above request, is found in the margin.[3] It was issued on May 11, 1915, and prior to the indictment. Treasury Decision No. 2879 was subsequent to the indictment and before trial, and was promulgated on July 2, 1919. It also may be found in the margin.[4]

[3] "To Collectors and Other Officers of the Internal Revenue: The Act of December 17, 1914, provides that a physician, dentist or veterinary surgeon, registered under the provisions of the law, may dispense or prescribe any of the narcotic drugs coming within its scope to those whom he shall 'personally attend' and in the course of his professional practice only. * * *

"While the law does not limit or state the quantity of any of the narcotic drugs that may be so dispensed or prescribed at one time, it does provide that it shall be unlawful to obtain, by means of order forms, any of the aforesaid drugs for any purpose other than the use, sale, or distribution thereof in the 'conduct of a lawful business in said drugs or in the legitimate practice of his profession.' * * *

"Therefore, where a physician, dentist or veterinarian prescribes any of the aforesaid drugs in a quantity more than is apparently necessary to meet the immediate need of a patient in the ordinary case or where it is for the treatment of an addict or habitue to effect a cure of a patient suffering from an incurable or a chronic disease, such physician, dentist or veterinary surgeon should indicate on the prescription the purpose for which the unusual quantity of the drug so prescribed is to be used. In case of treatment of addicts, these prescriptions should show the good faith of the physician in the legitimate practice of his profession, by a decreasing dosage or reduction of the quantity prescribed from time to time, while on the other hand in cases of ·chronic or incurable diseases, such prescriptions might show an ascending dosage or increased quantity. Registered dealers selling such prescriptions shall assure themselves that the drugs are prescribed in good faith for the purpose indicated thereon and if there is reason to suspect that the prescriptions are written for the purpose of evading the provisions of the law such dealers should refuse to fill the same."

[4] "To the Collectors of Internal Revenue and Others Concerned: The ruling contained in Treasury Decision 2200 of May 11, 1915, permitting a practitioner to dispense or prescribe narcotic drugs in a quantity more than is necessary to meet the immediate needs of a patient, is hereby revoked, and the revocation shall be applicable in all cases whether a decreasing dosage is indicated or not. The Act of December 17, 1914, as amended February 24, 1919, permits the furnishing of narcotic drugs by means of prescriptions issued by a practitioner for legitimate medical use, but the Supreme Court has held that an order for morphine, issued to a habitual user thereof, not in the course of professional treatment in any attempted cure of the habit, but for· the purpose of providing the user of the morphine sufficient to keep

It is said that these Treasury Decisions were issued in accordance with section 1 of the Harrison Act which provides as follows:

That "the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall make all needful rules and regulations for carrying the provisions of this act into effect."

And we are told that the defendants relied upon Treasury Decision 2200 in the transaction of their business in giving prescriptions to addicts. Counsel say that the later Treasury Decision, No. 2879, changed the rule as to giving prescriptions to addicts and that the jury was instructed in accordance with the subsequent modification. We are informed in the brief for the defendants that—

"It is therefore shocking to one's sense of justice that the plaintiffs in error, who conducted their business in accordance with the decisions and orders of the Treasury Department, are to be deemed guilty of a crime because of an interpretation subsequently given to the law by the same branch of the government which had previously given the interpretation acted upon."

Assuming that these Treasury Decisions conflicted, and that Decision No. 2200 was wrong and Decision No. 2879 was right and in accordance with the decision of the Supreme Court in Webb & Goldbaum v. United States, 249 U. S. 96, 39 Sup. Ct. 217, 63 L. Ed. 497, the trial judge was bound to disregard No. 2200; the meaning of the act is authoritatively determined by the court, and not by the Treasury Department. Ignorance of the law excuses no one. It could be no excuse that the defendants relied on a Treasury Decision which was wrong. In the Webb Case it was authoritatively settled that if a practicing and registered physician issues an order for morphine to an habitual user thereof, the order not being issued by him in the course of professional treatment in the attempted cure of the habit, but for the purpose of providing the user with morphine sufficient to keep him comfortable by maintaining his customary use, such order is not a physician's prescription under exception (b) of section 2 of that act. The instruction given by the court conformed to the ruling of the Supreme Court and there was no error in refusing the instruction requested.

[6] The learned counsel for defendants in his argument in this court urged upon us that this record contains no evidence which justified a conviction of William Cohen on the conspiracy count. The point made is that inasmuch as the jury acquitted him of any of the substantive counts in the indictment, and as the overt acts charged in the conspiracy are two of the sales to the agents of the government which are the subject-matter of substantive counts, he cannot be convicted of a conspiracy. This is to lose sight of the fact that, if a conspiracy is proved to have existed between the defendants, it is not necessary to prove that all of the defendants did the overt acts which they are

him comfortable, by maintaining his accustomed use, is not a prescription within the intent and meaning of the act. U. S. v. Doremus, October Term, 1918, Treasury Decision 2809.

"In view of this decision, the writer of such an order, the druggist who fills it, and the person obtaining the drugs under it will all be guilty of violating the law."

alleged to have done. All that is necessary is that one or more of such parties did an act to effect the object of the conspiracy. If the evidence clearly showed that William Cohen took part in the conspiracy and that the overt acts were done by the other conspirators, then he was properly convicted. Every act of each member of the conspiracy in pursuance thereof was in contemplation of law the act of them all, and was evidence against each of them. The doing of the overt acts charged by two of the conspirators is established by the verdict finding them guilty on the substantive counts based on the acts alleged as overt acts. The question whether there was a conspiracy and whether William Cohen participated in it was for the jury, and without reviewing the testimony in detail it must suffice to say that in our opinion there was evidence from which the jury might conclude that he was in the conspiracy. During the period covered by the indictment William Cohen was, in the absence of his brother Louis, in charge of the drug store, and filled or verified prescriptions and waited on customers, and received checks from Louis which are claimed to have been received as his share in the proceeds of the business of the drug store.

There are other assignments of error, which we have considered, but do not find it necessary to review at length. We find nothing in them which should lead the court to reverse the judgment. The case was ably argued on behalf of the defendants, but we find no error, and

Judgments are affirmed.