## NEWMAN v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 10, 1924.)

No. 2172.

1. **Criminal law ⟨⟫753(2)—Conflicting testimony held to require submission of issue to the jury.**

Where the issue whether defendant, a duly registered practicing physician, was induced to prescribe morphine for a government agent, through entrapment and misrepresentation by the agent that he was suffering from a disease, the symptoms of which he described, depended solely on the testimony of the two, which was in direct conflict, refusal to direct a verdict for defendant was not error.

2. **Criminal law ⟨⟫37—Government estopped from prosecuting offense originated and induced by its agents.**

The first duties of officers of the law are to prevent, not to punish, crime, and when the criminal design originates, not with the accused, but is conceived in the mind of the government officer, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped from prosecution therefor.

3. **Criminal law ⟨⟫772(6)—Instructions on issue of entrapment approved.**

Instructions on the issue of entrapment *held* full and correct, as applied to the evidence.

4. **Poisons ⟨⟫4—Furnishing morphine to addict held not justified by claim of professional practice.**

A physician cannot justify giving or selling morphine to an addict to gratify his desire for the drug, on the claim that it was given in the course of his professional practice.

5. **Criminal law ⟨⟫814(18)—Instruction that jury might consider "character" of witnesses held not erroneous.**

Instruction that, in considering the testimony of witnesses, the jury might take into consideration their character, with other relevant matters, *held* not erroneous, though no character evidence was introduced.

6. **Poisons ⟨⟫9—Not necessary to negative exemptions under Narcotic Act.**

The provision of Harrison Narcotic Act, § 8 (Comp. St. § 6287n), that it shall not be necessary to negative any exemptions in an indictment, applies to the entire act, and places the burden of proof as to any such exemptions on the defendant.

7. **Criminal law ⟨⟫1208(2)—Discretion of trial judge in imposing sentence not reviewable.**

A sentence, if within the limits of the statute, is in the discretion of the trial judge, and cannot be changed by the appellate court.

⟨⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Northern District of West Virginia, at Elkins; William E. Baker, Judge.

Criminal prosecution by the United States against Felix R. Newman. Judgment of conviction, and defendant brings error. Affirmed.

See, also, 289 Fed. 712.

R. H. Allen, of Elkins, W. Va. (A. M. Cunningham, of Elkins, W. Va., on the brief), for plaintiff in error.

T. A. Brown, U. S. Atty., of Parkersburg, W. Va., W. C. Grimes, Asst. U. S. Atty., of Wheeling, W. Va., and H. D. Matthews, Asst. U. S. Atty., of Parkersburg, W. Va.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. The indictment in this case charged F. R. Newman, a practicing physician of Elkins, W. Va., duly registered as required by law, with violating the Harrison Narcotic Act (Comp. Stat. §§ 6287g–6287q). The indictment contained four counts. The first and third counts charged that defendant knowingly and feloniously gave, distributed, dispensed, and furnished on May 7, 1922, and June 6, 1922, to one John Walter McDonald, a narcotic inspector, 16 one-fourth grain morphine tablets and 6 grains of morphine, on the respective dates, not in the course of his regular professional practice as such physician, and not in the treatment of any disease from which McDonald was suffering, and not pursuant to a written order therefor issued for the purpose by the Commissioner of Internal Revenue. The second and fourth counts charged that defendant did on or about June 5, 1922, and June 14, 1922, respectively, knowingly give, distribute, dispense, and furnish to the said John Walter McDonald morphine tablets by means of certain prescriptions, not in the course of his professional practice.

The first trial of this case at the June term, 1922, resulted in acquittal on counts 2 and 4, and conviction on counts 1 and 3. The case was reversed and remanded for new trial upon grounds stated in 289 Fed. 712. Defendant was tried and convicted a second time at the June term, 1923, on counts 1 and 3.

[1] The first assigned error is the refusal of the trial judge to direct a verdict of not guilty on the ground of entrapment of the defendant by the government agent. There is a sharp conflict between the testimony of John Walter McDonald, the government narcotic inspector, and Newman, the defendant, on the vital issues of fact involved. There is no testimony by other witnesses, either on behalf of the government or the defense concerning the transactions between the inspector and the accused. McDonald testified that he was sent to Elkins, W. Va., in May, 1922, to investigate Newman, who was suspected of violation of the Harrison Narcotic Act. He called at Newman's office on May 3, 1922, and told defendant that he was an addict and wanted some morphine. The doctor refused to give him any, stating that he was "on the square" and had nothing to do with addicts. McDonald started to leave the office, but upon request remained and conversed with accused for an hour or so. On May 6, 1922, while walking down

Randolph avenue he met Newman, who said "Hello! How are you?" "How are you making it?" McDonald replied that he had been able to get two or three capsules at a station. Thereupon the doctor said that that would not last him very long, as he was an unusual type to use it, but that it would "cover" him for a few days, the little he used. Then Newman asked, "When do you expect to get out of town?" McDonald replied that, if he did not get a little more, he would have to leave in a day or so. The defendant thereupon asked the inspector to come in and see him if he was in town the next day. Pursuant to this invitation, McDonald called at defendant's office the following day, which was Sunday, May 7, 1922. The doctor took him into his private office, wrote a prescription in his presence, then asked if McDonald minded if he got it himself, tore up the prescription, went out, and returned in a few minutes and handed the inspector the box containing the morphine tablets referred to in the first count of the indictment. He charged nothing for the morphine and would not accept money offered him by the inspector. McDonald further testified that on the same day he went to Clarksburg, W. Va., where he turned the box of morphine tablets over to Federal Narcotic Inspector L. M. Graves, his chief. He returned to Elkins in June, and on the night of June 6, 1922, called at defendant's office, and asked defendant "if he had anything for me." The doctor replied, "No," but sat down at his desk and was busy for a moment. He then requested McDonald to wait a few minutes until he got back. He returned with a bottle containing the morphine referred to in the third court, which he handed to McDonald, and charged and received $2 therefor.

Newman flatly contradicted this testimony of McDonald, denying that he had given morphine to McDonald on the dates and in the manner as testified. He gave this account: The first time he saw McDonald was on June 5, 1922, when the man came to his office and introduced himself as a retired druggist from Washington, D. C., in the mountains for his health. He claimed to be suffering from ulcers of the stomach, and stated that when he had "spells" his doctor in Washington gave him morphine. The doctor examined McDonald and found him highly nervous. He took note of his subjective symptoms, which would enable him to determine without X-ray whether the patient had ulcers of the stomach, and concluded, after hearing the history of the case from the patient, that he was suffering from ulcers of the stomach. He then prescribed 12 one-fourth grain morphine tablets. A day or two after this he met McDonald on Randolph avenue, and in reply to his inquiry as to how he was getting along McDonald said that he was in misery and could not rest. He advised him to go to his room and try to rest. He did not invite McDonald to come to his office. Later in the same week McDonald again visited the doctor's office, and stated that he was going to the mountains for his health, and was advised as to the best place to go. He did not ask for morphine on this occasion, nor was any given him. On June 14, 1922, McDonald returned to the office, stated that he had been up in the mountains, felt greatly improved in health, and was going back. He said that it was an out of the way place, and asked for another prescription, which was given for

12 one-fourth grain morphine tablets; the ailment of the patient being diagnosed as the same as on the first visit. No charge was made for the prescriptions and no money passed between them. He kept no record of the prescriptions. The prescriptions, which McDonald had filled at a drug store in Elkins, directed the taking of "one tablet every two hours until pain is relieved." He was not certain whether he told McDonald to take a tablet every hour, or every two hours, but admitted that he could have taken the whole amount at one dose. McDonald did not tell him he was an addict, and, had he done so, he would have refused to treat him, or have anything to do with him, as he did not treat addicts, and had refused commissions from government officers to handle such cases since 1919. He prescribed for McDonald as a patient after a physical examination.

McDonald denied that he told Newman he was suffering or had ulcers of the stomach, or that any physical examination was made, and insisted that he had merely told the doctor he was an addict. If McDonald, as the defendant testified, under a pretense of suffering from tumor of the stomach, appealed to defendant to relieve him, and thus induced him to give or sell him the morphine, the jury could well have acquitted the defendant on the ground that he had been entrapped; but if, as McDonald testified, he applied to defendant to sell him the drug as an addict, and defendant refused, but afterwards invited McDonald to his office and gave or sold him the morphine, the jury could well find there was no entrapment. Under this conflicting testimony the court was right in refusing to tell the jury that they should acquit the defendant, because he was entrapped by the officer.

[2] As the issue of entrapment was vital, the defendant was entitled to an accurate statement of the law of entrapment. It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor. "The first duties of the officers of the law are to prevent, not to punish, crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it." Butts v. United States (C. C. A.) 273 Fed. 35, 18 A. L. R. 143; Goode v. United States, 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297; Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550; Fiunkin v. United States (C. C. A.) 265 Fed. 1; Smith v. United States (C. C. A.) 284 Fed. 673; Rothman v. United States (C. C. A.) 270 Fed. 31; Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604; Zucker v. United States (C. C. A.) 288 Fed. 12; United States v. Reisenweber (C. C. A.) 288 Fed. 520; United States v. Healy (D. C.) 202 Fed. 349; United States v. Lynch (D. C.) 256 Fed. 983.

[3] On the subject of entrapment the following instruction was given at the request of defendant's counsel:

"The court instructs the jury that, while it is permissible for government agents and officials, through detectives and decoys, to entrap criminals, or to present opportunity to those having intent to or who are willing to commit crime, it is not proper for government officials, agents, detectives, or decoys to incite to or create crime, for the purpose of prosecuting it or punishing it, and if the jury believe from the evidence that the government's agent and witness, John Walter McDonald, through false statements made to the defendant to the effect that he was suffering from a disorder of the stomach and required morphine for the purpose of relieving the pain incident thereto, or that he was an addict or had been an addict, and found it necessary occasionally to take small doses in an attempt to cure himself from the drug habit, and through such statements, which were false, procured from the defendant the morphine for the dispensing of which the defendant stands indicted, and the defendant, believing the statements made by McDonald were true, was induced thus to violate the law, and that said defendant was not theretofore willing thus to violate the law, and would not otherwise have violated the law, then the jury should find the defendant not guilty."

This instruction clearly stated in concrete form the whole law of the subject applicable to the facts of the case. There was, therefore, no error in refusing to give two other requests which were nothing more than abstract statements of the same rule.

Exception was taken to the words italicized in the following instruction:

"The court instructs the jury that, if *the federal agent, McDonald, had reasonable grounds to suspect, and did suspect, defendant of illegally dispensing narcotics*, and the action of Mr. McDonald was taken in an effort to detect crime, and not to induce its commission, then such action was lawful, and if the defendant committed the acts as charged in counts No. 1 and No. 3 in the indictment, as detailed in the testimony of the government witness, John Walter McDonald, they should find the defendant guilty."

If the defendant committed the acts as detailed in the testimony of McDonald, the action of McDonald was lawful, and defendant was guilty, whether McDonald's action was due to his reasonable suspicions or not. Therefore, if the qualification made by the judge that reasonable suspicion by McDonald was necessary to the legality of his action, and the conviction of the defendant was erroneous, the error was in favor of the defendant. In short, if McDonald's testimony was true, the defendant was guilty; if the defendant's own testimony was true, he was not. And this was in substance the charge given the jury.

[4] The instruction was right that a physician cannot justify giving or selling morphine to an addict to gratify his desire for the drug, on the claim that it was given in the course of the physician's professional practice. Webb v. United States, 249 U. S. 96, 39 Sup. Ct. 217, 63 L. Ed. 497; Rothman v. United States (C. C. A.) 270 Fed. 31, 37.

[5] Error is assigned in the including of the words "their character" in the following instruction:

"And in considering the evidence of all witnesses, including the defendant's, you may take into consideration their demeanor on the stand, the reasonableness or unreasonableness of their testimony, *their character*, and motives so far as disclosed by the evidence, and their interest, if any, in the result of the trial. And in connection with all the surrounding conditions and circumstances, if you believe any of the persons testifying in this case have testified falsely, you may believe such parts of such testimony as you believe to be true, and reject such parts as you believe to be false; for it is a matter for you to determine, from all the testimony taken and all the circumstances

surrounding the case, and the demeanor of the witnesses, whether the defendant is guilty or not guilty."

It is true no character evidence was introduced, but the course of the trial often indicates to the jury the character of a witness as to the accuracy and truthfulness of his testimony. It was merely stating the obvious to say that the jury could give consideration to character thus disclosed by the evidence to their eyes and ears. The charge was so strong and explicit that the defendant was presumed to be innocent until he was proved to be guilty that the jury could not have failed to understand it. The meaning of the words, "not that we take that to be an absolute rule," used in this connection by the judge, is not clear; but it certainly could not have been understood by the jury as limiting in any way the clear statement of the law of presumption of innocence and of reasonable doubt. Whether the rule of presumption of innocence was in the mind of the judge an absolute or qualified rule, he charged the jury explicitly that it was to be applied without qualification in this case.

[6] Appellant insists that the government failed to prove the corpus delicti, in that the evidence failed to prove any crime under section 2 of the Harrison Narcotic Act (Comp. Stat. § 6287h). The position taken is that the burden is on the government to prove that the accused did not come within any of the exceptions to that section; in other words, before a conviction under this section can be sustained, the government must negative the exemptions. Section 8 of the act (Comp. Stat. § 6287n) provides:

"That it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this act; and the burden of proof of any such exemption shall be upon the defendant."

This proviso in section 8 applies to the entire act, making it unnecessary to negative the exemptions, and placing the burden of proof of any such exemptions upon the defendant. Oliver v. United States (C. C. A. 4th Circuit) 267 Fed. 544; Rothman v. United States (C. C. A.) 270 Fed. 31; James v. United States (C. C. A.) 279 Fed. 111; Oakshette v. United States, 260 Fed. 830, 171 C. C. A. 556; Fiunkin v. United States (C. C. A.) 265 Fed. 1; Melanson v. United States, 256 Fed. 783, 168 C. C. A. 129; Wallace v. United States, 243 Fed. 300, 156 C. C. A. 80.

[7] The record shows that the conviction was on the charge of dispensing on two occasions 16 one-fourth grain morphine tablets and 6 grains of morphine, respectively, to one person. It appears that the defendant has suffered imprisonment of approximately 18 months in jail and the federal penitentiary, the greater part in the penitentiary, while his case has been pending in the District Court and in this court. A strong and persuasive appeal was made to us that further punishment for the crime for which defendant was convicted would be a great hardship. While we are strongly impressed with this view, punishment within the limits of the statute is in the discretion of the trial judge, and this court can give no relief on this ground.

Affirmed.