Jacob Ulmon **WILEY**, Eva P. Wiley, and Christine Wiley Deaver, Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 8007.

United States Court of Appeals
Fourth Circuit.

Argued March 16, 1960.

Decided April 20, 1960.

Robert Leroy McMillan and Thomas A. Banks, Raleigh, N. C., for appellants.

Samuel A. Howard, Asst. U. S. Atty., Raleigh, N. C. (Julian T. Gaskill, U. S. Atty., Goldsboro, N. C., on brief), for appellee.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

SOPER, Circuit Judge.

Jacob Ulmon Wiley, Eva P. Wiley, his wife, and Christine Wiley Deaver, their daughter, were charged in an indictment of five counts for violating the provisions of 26 U.S.C. §§ 4742(a) and 4744(a) with respect to the transfer of marijuana without having paid a special tax required by 26 U.S.C. § 4741 and without receiving a written order from the transferee. The transactions were charged to have occurred on diverse dates in June, July and August, 1958, in the eastern district of North Carolina. The accused were not joined as defendants in all of the counts. When the case was called for trial and before any evidence was taken counts 1 and 3 of the indictment were dismissed on motion of the defendants without objection by the United States and the case proceeded to trial on counts 2, 4 and 5.

Count 2 charged that on June 11, 1958, Jacob and Christine, in violation of § 4742(a), feloniously transferred 1382.30 grains of marijuana to Revenue Agent Richard M. Patch without receiving a written order from him on a form issued by the Secretary of the Treasury or his delegate.

Count 4 charged that on July 8, 1958, Eva and Christine made a transfer of 3835.90 grains of marijuana to the agent without a written order in the same way as charged in count 2.

Count 5 charged that Eva, on August 18, 1958, feloniously acquired 7 ounces of marijuana without having paid the tax required by § 4741.*

---

* Section 4741 provides in effect that there shall be imposed upon all transfers of marijuana, required by § 4742 to be carried out in pursuance of written order forms, taxes at certain rates, including a tax of $100.00 per ounce of marijuana or fraction thereof upon each transfer to any person who has not paid the special tax and registered under §§ 4751–4753.

Section 4742(a) provides: "It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the

At the call of the case the defendants pleaded not guilty and objected to a joint trial and moved for a severance but the motion was denied. At the conclusion of the Government's evidence and again at the conclusion of all of the evidence the defendants moved for a verdict of acquittal but these motions were also denied. The jury found the defendants guilty as charged and thereupon Jacob was sentenced to five years imprisonment on count 2, Christine to five years on count 2 and five years on count 4 to run concurrently, and Eva to five years on count 4 and two years on count 5 to run concurrently. These were minimum sentences under 26 U.S.C. § 7237.

The evidence on behalf of the Government tends to show the following facts. The three defendants live near Garner and Raleigh, North Carolina. The husband and wife live together while their daughter lives in a separate house nearby with her husband and children. She and her husband operate a store close to their house. On June 11, 1958, Agent Patch purchased 1382.20 grains of marijuana seeds, stems and fragments of marijuana leaves from Jacob and Christine, his daughter. The agent had previously met the three defendants at the daughter's store and had talked to Jacob about marijuana. Returning to the store on June 11th he talked with Christine, who told him that she had no marijuana but did have enough marijuana seed to plant four acres of land, and she explained the proper way to cultivate and harvest the crop. Later, on the same day, they were joined by Jacob and the three of them went to the rear of his house where he produced a paper bag containing two pounds of marijuana, of which Agent Patch purchased 1382.20 grains,

which Jacob placed in a plastic cheese container and sold to him for $20.00. The material was subsequently weighed with precision and analyzed by the Government chemists and was found to consist of marijuana. On this and other visits made by the narcotic agents to the Wiley home in search of violations of the law the agents were assisted by one Alfred Blount, a special employee of the service who had an unsavory record as a violator of the narcotic and lottery laws.

On July 8, 1958, Agent Patch returned to the Wiley house and met Christine and her mother, Eva. In response to a request by him to buy more of the marijuana seed, Christine produced a paper bag containing about one pound of the substance and sold it to him for $50.00. The material was weighed in the presence of the two women and the agent on a set of scales produced by Eva and found to weigh about one-half pound. The agent did not present to the defendants either on June 11th or July 8th a written order for marijuana on a form issued in accordance with § 4742(a) of the Act.

On August 18, 1958, John L. Kelly, a narcotic agent in charge of the District Office at Greensboro, North Carolina, executed a search warrant on the Wiley house in company with several other agents, including Agent Robert W. Pope. At the time of the search all three of the defendants were present. Pope remained in the living room with the defendants while the other agents searched other parts of the house. He granted Eva's request to leave the room but stood in the doorway to observe her actions and noticed an attempt on her part to conceal upon her person an object which proved to be a brown paper bag. He called the other agents, who demanded

person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate."

Section 4744(a) provides: "It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741(a) to acquire or otherwise obtain any marihuana without having paid such tax; and proof

that any person shall have had in possession any marihuana and shall have failed, after reasonable notice and demand by the Secretary or his delegate, to produce the order form required by section 4742 to be retained by him shall be presumptive evidence of guilt under this section and of liability for the tax imposed by section 4741(a)."

the production of the bag and she refused until directed by her husband to produce it. The bag contained a quantity of marijuana seed, stems and fragments of leaves, which weighed approximately seven ounces. At that time, in response to questions, all three of the defendants stated that the marijuana had been brought to their home by one Daniel George, who raised marijuana on a farm between Selma and Zebulon, North Carolina. Prior to executing the search warrant Jacob Wiley, out of the presence of the other defendants, told Agent Kelly that "Dan had approximately twenty pounds of marijuana that he [Jacob] was going to sift that night." An objection to the last mentioned statement of Jacob was overruled but the jury were instructed that they should consider the testimony as relating to Jacob alone and should not regard it at all with respect to the other two defendants.

It was shown that during the period covered by the counts of the indictment in suit no one of the defendants had registered his name and place of business with the official in charge of the Internal Revenue District in which his place of business was located, as required by § 4753 of every person who is subject to the tax imposed by § 4751 upon every person who sells or deals in marijuana. Nothing was said to any of the parties on August 18, before their arrest, as to whether they had a written order or orders for the marijuana that had been transferred, but after the defendants had been taken into custody and were asked to produce the order form required by the statute, each one said that he did not have a form and could not produce it. It was also brought out that no form of order for the handling of marijuana had been issued by the Government.

Agent Patch testified on direct examination in respect to a conversation which he had with Christine on July 8, 1958, the day when Agent Patch purchased a half pound of marijuana for $50.00. He testified over objection that at the time Christine said that she did not have any marijuana that day but that there was a person within "hollering distance" who had a "nice crop of marijuana growing." She also said that she "had marijuana growing on her husband's peoples farm in Jacksonville, North Carolina" and that that crop would be harvested the latter part of August. This testimony was taken over objection and thereupon a motion to strike the testimony was made and granted and the jury were instructed not to consider the testimony of the witness but erase it from their minds.

The evidence on the part of the defense indicated that the defendants bore an excellent reputation in their community and had been engaged successfully in lawful occupations, Jacob as a shipping clerk, painter and part-time farmer; Eva as a housewife and teacher, with a college degree, in the public schools; and Christine as a housewife, mother of three children, and helper in the store conducted by her husband. But the defendants did not dispute the presence of marijuana in the Wiley house on the three occasions during the summer of 1958 mentioned by the Government agents, although there were differences as to the precise dates. Jacob's account was that on the first occasion he had found the seed in an old refrigerator in the house and had transferred a portion of it to Patch and Blount for $20.00, which was paid to an employee of Jacob and later turned over to him. He knew that marijuana could be grown from the seed. Eva admitted that she was present with her daughter when part of the seed was weighed and transferred to the agents and $50.00 was passed, but she testified that she did not participate in the transaction. She knew the nature of the substance. She also admitted that she knew where the seed was located on the third occasion at the time of the search of her house and tried to conceal it on her person. Christine denied that she was present at the time of the first transfer but admitted she was present on the second occasion when the stuff was weighed and $50.00 was left on the table in her mother's house. No testimony was offered by the defendants that they

had paid the tax or otherwise complied with the laws regulating the possession or transfer of marijuana.

■ Notwithstanding this testimony on both sides, it is argued by the appellants that the judge erred in refusing to grant a severance. The rules of criminal procedure relating to the joinder of defendants in the same indictment were recently considered in the opinion of Chief Judge Sobeloff of this court in Ingram v. United States, 4 Cir., 272 F.2d 567, November 5, 1959. It was shown that these rules were a codification of existing law; and that Rule 8(b), 18 U.S.C., permits the joinder of defendants who have participated in the same unlawful act or in the same series of unlawful acts and that the defendants may be charged together or separately and all of them need not be charged in each count. It was further shown that under Rule 13 the court may order separate trials of counts or grant a severance of defendants if justice requires it, and that the grant or denial of a motion for severance or a new trial rests within the discretion of the trial judge and that his decision is not reversible unless an abuse of discretion is affirmatively shown.

■ It is plain that there was no abuse of discretion in denying the motions for severance in the pending case. It was alleged in the indictment and proved that the defendants participated in the same series of acts, all of which involved transactions in the transfer or possession of marijuana seed during a short period in the summer of 1958. The joinder of father and daughter in the first transaction, the joinder of mother and daughter in the second transaction, and the separate charge against the mother in the third transaction fell strictly within the terms of the rule, and there was no prejudice to the three defendants in trying them together other than that which necessarily attends every joinder of defendants for trial under the established procedure. Rule 8, as we have seen, specifically provides that all of the defendants need not be charged in each count.

■ It is argued in the pending case that special harm was done to the defendants in the trial below when, on a number of occasions, evidence was introduced of an incriminating statement or action by one or more of the defendants out of the presence of the others. Thus Agent Patch testified that, on June 5, he met all three defendants at the Deaver store and talked to Jacob separately about purchasing marijuana and was told to come back later; and that, on June 11, he talked to Christine out of the presence of her parents about the same thing at the store and was told that she had no marijuana but did have some seed and that later, on the same day, out of the presence of the mother, he talked with the father and daughter and purchased seed from them.

There was also evidence of a conversation, on August 18, between Agent Kelly and the father in which the latter, out of the presence of the other defendants, told of twenty pounds of marijuana belonging to one Dan George that Jacob was "going to work" that night. The agent, however, testified that all of the defendants explained that the marijuana had been brought to their home by George, who had raised it on his farm.

There is no doubt that all of this evidence contributed to the conviction of the three defendants but objection was not always interposed by the defendants when the evidence was offered. When specific objection was made, the District Judge took appropriate action. For example, when the agent testified as to the statement of Jacob Wiley that he was going to handle the twenty pounds of marijuana on the night of August 18, the jury were instructed that they should consider the testimony as relating only to Jacob Wiley and should not consider it in regard to the other two defendants. On another occasion during the trial Agent Patch was allowed to testify over objection that, on July 8, Christine Deaver told him that she could not get any marijuana for him that day but that there was a person nearby who had "a nice crop of marijuana growing" and that she had marijuana growing on the farm

of relatives of her husband in North Carolina which would be ready for harvest in August. After argument this testimony was stricken out and the jury were instructed to disregard and erase it from their minds.

The action taken by the judge on these occasions was in accord with approved procedure. Obviously it is difficult for a jury to erase from their minds testimony which they have heard, but it is not impossible for them to consider a statement of one defendant as evidence only against the speaker. It is well-nigh inevitable that such incidents should occur with regard to both incriminating statements and incriminating acts of individual defendants when there is a joinder under the permissive provisions of the rules. The matter is one which must be left to the careful consideration of the trial judge, and the course for him to follow is indicated by the following quotation from Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101, which is particularly pertinent to the instant case:

"It was within the sound discretion of the trial judge as to whether the defendants should be tried together or severally and there is nothing in the record to indicate an abuse of such discretion when petitioner's motion for severance was overruled. The trial judge here made clear and repeated admonitions to the jury at appropriate times that Hollifield's incriminatory statements were not to be considered in establishing the guilt of the petitioner. To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions. There is nothing in this record to call for reversal because of any confusion or injustice arising from the joint trial. The record contains substantial competent evidence upon which the jury could find petitioner guilty."

In view of the close relationship between the defendants in the instant case and the admissions in their testimony at the trial, it is plain that no error was committed in joining them for trial or in receiving the testimony referred to.

A particular contention is made on behalf of Eva Wiley that the evidence was insufficient to sustain the charge in the fifth count that, on August 18, she had acquired seven ounces of marijuana without having paid the tax required by § 4741(a) of the Act. It is provided in § 4744(a) that possession of the substance shall be presumptive evidence of guilt under this section if the possessor fails after reasonable demand to produce the proper order form required by the statute, which demand was made in this case. The appellant relies on such cases as Guevara v. United States, 5 Cir., 242 F.2d 745, and Rodriguez v. United States, 5 Cir., 232 F.2d 819, in which the court found the evidence insufficient to prove possession on the part of the defendant where it seemed more likely that the substance was in possession of another. But these cases have no bearing here since the defendant Eva Wiley herself admitted that she concealed the substance on her person at the time of the search.

We find no substantial basis for the additional argument of the appellants that they should have been acquitted because they were entrapped into the commission of the crimes named in the indictment by the actions of the Federal agents. The law of entrapment is settled by the decision of the Supreme Court in the leading case of Sorrells v. United States, 287 U.S. 435, at page 445, 53 S.Ct. 210, at page 214, 77 L.Ed. 413, where the Court adopted the statement of the applicable principle made by Judge Woods of this court in Newman v. United States, 4 Cir., 299 F. 128, 131, in the following words:

" * * * 'It is well settled that decoys may be used to entrap criminals, and to present opportunity to

one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor.' "

The actions of the agents in the pending case were investigatory and were not calculated to induce or over-persuade the defendants to commit crimes which otherwise they would not have perpetrated. It is true that the agents made a number of attempts to purchase the contraband substance from the accused, but obviously they did not put the idea of trafficking in the substance into the defendants' minds. Their own testimony indicates that the marijuana was already in their possession and was being preserved by them when they were first approached. The agents were not in duty bound to disclose their identity and their purpose when they made their first discovery, as the defendants contend. They were well within the proper performance of their duty as investigating officers when they continued their visits in order to ascertain the extent of the defendants' operations.

The question of entrapment was properly submitted in the charge of the judge when the jury were told that the defendants were entitled to an acquittal if the jury should find that they had no previous intent or purpose to violate the law but were induced or persuaded by the representatives of the Government to commit the crime. The instructions were clear and specific on the point and were in accord with the principles laid down by the Supreme Court of the United States.

■ Nor should the judgments be reversed because the District Judge denied the motion of the defendants to set aside the verdicts on the ground that a fair trial could not be had in the City of Raleigh by reason of certain articles which appeared in the local newspapers during the progress of the case. The articles had no reference to the defendants' case, but merely published the information that two men had been arrested and charged with illegally harvesting, possessing, and shipping marijuana in the neighborhood of Garner, North Carolina. It is quite clear that the publication of these articles did not require setting aside the verdicts for they did no more than to inform the jury that similar crimes were being committed in the neighborhood, and did not tend to show that the defendants did not have a fair trial.

Affirmed.