UNITED STATES of America,
Appellee,

v.

Robert N. DeVORE, M.D., Appellant.

No. 13580.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1969.

Decided March 18, 1970.

Charles Porter and Terrell L. Glenn, Columbia, S. C. (Glenn & Porter, Columbia, S. C., Garvin & Grant, Aiken, S. C., and Blatt, Fales & Peeples, Barnwell, S. C., on the brief), for appellant.

Thomas P. Simpson, Asst. U. S. Atty. (Joseph O. Rogers, Jr., U. S. Atty., on the brief) for appellee.

Before WINTER and CRAVEN, Circuit Judges, and HARVEY, District Judge.

CRAVEN, Circuit Judge:

Dr. Robert N. DeVore was charged in a nine-count indictment involving unlawful sale of drugs in violation of 21 U.S.C. §§ 331(q) (2), 331(q) (4) (Supp. IV 1965–1968) and 21 U.S.C. § 331(p) (1964). After five counts were dismissed DeVore was tried and convicted on the remaining four counts, sentenced to a term of four years in prison, and fined $22,000. On appeal he assigns six points of error in support of his contention that we should direct acquittal, or at the very least, order a new trial. We believe none are meritorious and affirm.

### I.

Dr. DeVore's first three points of error relate to the defense of entrapment.[1] The defense of entrapment rests on the premise that the purpose of law enforcement is the prevention, not the manufacture, of crime. See Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). In fulfilling this purpose the police may utilize stealth and deception, so long as these strategies do not "induce" an otherwise innocent person to commit a crime. Sherman v. United States, *supra*, 356 U.S. at 372, 78 S.Ct. 819. The government may provide the opportunities or facilities for the commission of an offense by one otherwise predisposed to criminal activity, Sherman v. United States, *supra*, at 372, 78 S.Ct. 819; United States v. Catan-

---

1. As framed by the defendant, his first three points of error complain that (a) he was denied due process when "predisposition" information was withheld from him, (b) the court erroneously allowed the government to use hearsay testimony to satisfy its burden of proof on predisposition and erroneously instructed the jury on the effect of the hearsay testimony, and (c) the government allowed a witness to create the false impression that Dr. DeVore had been under previous investigation for illicit drug activity. Each of these arguments is related to the government's "burden" to show its reasonable cause to believe in DeVore's criminal predisposition in order to justify soliciting him. We treat the points together because of our conclusion that the government has no such burden and, therefore, that DeVore's first three assignments of error are based upon a false premise.

zaro, 407 F.2d 998 (3rd Cir. 1969) ; United States v. Soles, 401 F.2d 521 (6th Cir. 1968), cert. denied, Nelson v. United States, 394 U.S. 931, 89 S.Ct. 1201, 22 L. Ed.2d 461 (1969) ; United States v. Smalls, 363 F.2d 417 (2d Cir. 1966), cert. denied, 385 U.S. 1027, 87 S.Ct. 755, 17 L.Ed.2d 675 (1967), but may not implant a criminal disposition into the mind of an innocent person, Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413 (1932) ; Eisenhardt v. United States, 406 F.2d 449 (5th Cir. 1969) ; McDowell v. United States, 383 F.2d 599 (8th Cir. 1967) ; Goss v. United States, 376 F.2d 812 (5th Cir. 1967) ; Rogers v. United States, 367 F.2d 998 (8th Cir. 1966) ; United States v. Irwin, 354 F.2d 192 (2nd Cir. 1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966) ; United States v. Gaines, 353 F. 2d 276 (6th Cir. 1965). Thus, two elements, the quality of the police conduct and the defendant's state of mind, are relevant in deciding whether there has been entrapment. The interaction of the two has caused some difficulty in formulating the burden of proof and has led to some suggestion that the government may not offer the opportunity to commit crime without first showing that there are reasonable grounds to believe that defendant is predisposed to commit the offense. See Lunsford v. United States, 200 F.2d 237 (10th Cir. 1952) ; Ryles v. United States, 183 F.2d 944 (10th Cir. 1950), cert. denied 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 637; Heath v. United States, 169 F.2d 1007 (10th Cir. 1948). We believe, with the First Circuit, that this goes too far. See Kadis v. United States, 373 F.2d 370 (1st Cir. 1967). Indeed, in this circuit it has been settled since Newman v. United States, 299 F. 128 (4th Cir. 1924), that the government need not have reasonable grounds to suspect illegal conduct before offering the opportunity to commit a crime.

In *Kadis* the First Circuit correctly formulated the rule: if the defendant, through government witnesses or otherwise, shows some indication that he was corrupted by government agents, the burden of disproving entrapment will be on the prosecution. A showing of solicitation alone, however, will not suffice to place the burden of going forward with evidence on the government, since solicitation by itself is not the kind of conduct that would persuade an otherwise innocent person to commit a crime. See, *e. g.,* Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) ; Sorrells v. United States, 287 U.S 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) ; United States v. Berry, 362 F.2d 756 (2d Cir. 1966) ; cf. Lopez v. United States, 373 U.S. 427, 437, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). The defendant, therefore, must also produce some evidence of unreadiness on his part, or of persuasion by the agent. *Kadis* is novel only in expressing the rule in terms of burden of proof. It was previously well established that a defendant must show *prima facie* overreaching inducive conduct on the part of the government before the issue of entrapment would be submitted to the jury. See, *e. g.,* Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963) ; Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958) ; Wiley v. United States, 277 F.2d 820 (4th Cir. 1960).

When the rules just discussed are applied to the facts of this case, it becomes apparent that DeVore failed to make an adequate showing of inducement. A government agent testified that he received information about Dr. DeVore's activities on two occasions in the latter part of 1967 and that he assigned another agent to investigate the reports. The investigating agent testified that he went to Dr. DeVore's office and posed as a truck driver seeking pills to keep him awake on a long trip. According to the agent the doctor agreed to give him a few pills, but at first refused to supply pills in large quantities for fear that the government would check his records. The agent told him that he was able to handle great quantities of pills for $100.00 per thousand, and Dr. DeVore ultimately agreed to obtain 10,000 Dexedrine pills for $1,-000.00. On a subsequent visit to the of-

fice the agent arranged for a future sale of 500–1,000 pills, referred to as "red birds." When the agent returned to pick up the 10,000 Dexedrine pills, he paid the doctor $850.00 and arranged to pay the balance a few days later. On a later visit he paid the $150.00 and purchased another bottle of pills, Nembutal, for $100.00. He also placed an order for 14,000 additional pills—10,000 Dexedrine, 2,000 Dexamyl, and 2,000 Nembutal. Over two weeks later he returned for the order of 14,000 pills and negotiated for additional shipments of drugs in larger quantities, but at a reduced price. He did not take the order of pills at that time, arranging instead to pick them up a few days later. He did return for the pills and paid the doctor $1,050.00 for the shipment, which he later found to be 2,000 pills short. On his final visit he recorded his conversation with the doctor by means of an electronic transmitter, which he carried on his person. On that occasion he purchased 10,000 Dexedrine pills and arrested Dr. DeVore. Portions of the tape recording were admitted into evidence in corroboration of the agent's testimony.

Dr. DeVore's version of what transpired differed from the agent's in two respects. First, he asserts that on the first contact he told the agent that he could not provide him with any pills. The main difference between his testimony and the agent's, however, was the reason the doctor gave for engaging in the contacts with the agent in the first place. He claims that he dealt with the agent only in order to trap him for the police. Dr. DeVore admittedly never informed the authorities of this plan, but he contends that he was, nevertheless, susceptible to plans of cooperation with the police, since he had once posed as a buyer of stolen goods to help state authorities catch a typewriter thief.

■ On this state of the record the government should never have been burdened with disproving entrapment. Dr. DeVore did not testify to any excessive behavior on the part of the government that could be said to be so inducive to a reasonably firm person as likely to dis-

place *mens rea*. Under the principles we have discussed, therefore, no "inducement" to commit the crime was ever shown. There was only solicitation—the providing of opportunity. With no more than this, Dr. DeVore was not entitled to a jury instruction on the issue. See Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); United States v. Berry, 362 F.2d 756 (2d Cir. 1966); see also Pierce v. United States, 414 F.2d 163 (5th Cir. 1969), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969).

Nevertheless, under the district court's charge, Dr. DeVore was given the benefit of an instruction on entrapment and more. The judge twice gave the jury an example of lawful entrapment in which the government had reasonable grounds to believe that a suspect was engaged in illegal activity before its agents initiated a solicitation. The court probably did not intend the example as an instruction that reasonable grounds to believe in predisposition are a necessary element of lawful entrapment. However, by including reasonable grounds as a part of its illustration, the court gave DeVore more than he deserved under the rule in this circuit. See Newman v. United States, 299 F. 128 (4th Cir. 1924).

Finally, even assuming the issue of entrapment was properly raised by Dr. DeVore's evidence, the issue was one for the jury. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The conflicts between the agent's testimony and the testimony of Dr. DeVore presented an issue of fact. In light of Dr. DeVore's failure to notify the police of the trap he was purportedly setting, the jury was justified in discrediting his version of the events.

II.

In his fourth point of error DeVore complains that the district court erroneously excluded certain testimony by Dr. DeVore's wife. The testimony concerned a statement made by the doctor to his wife on an occasion when he had taken her to observe some damage to the back

door of his office. It appeared the door had been damaged by someone attempting to break in. The doctor told his wife that he thought he knew who had attempted to break in and why—to obtain drugs. He stated to her that he was going to set a trap for the person.

We disagree with DeVore's assertion that the testimony was excluded by the court solely because it was "self-serving," whatever that means. The record conclusively shows that the court excluded it on the grounds that Dr. DeVore had said nothing about the incident in his own testimony. Thus, the court viewed the statement as inadmissible in corroboration, since no foundation had previously been laid for it. The court did admit other testimony of Dr. DeVore's wife, as well as that of two other witnesses, to an identical statement by the doctor on a subsequent occasion.

▮ The excluded testimony was intended by the defense as "rehabilitative" evidence. DeVore contradicted the testimony of the government agents and testified to a special motive for his actions. Corroborative evidence is clearly permissible under such circumstances. See United States v. Leggett, 312 F.2d 566 (4th Cir. 1962). Nevertheless, the extent to which prior consistent statements should be admitted for purposes of corroboration is a matter in the sound discretion of the trial judge. Beaty v. United States, 203 F.2d 652 (4th Cir. 1953). Although we believe the district judge's view of corroborative evidence to be somewhat narrow,[2] we cannot say that he abused his discretion on this record. As noted, he allowed three witnesses to testify about a statement identical to the one excluded, but made at a later date. In this context, if error occurred it was not so prejudicial as to justify direction of a new trial. See 6 WIGMORE, EVIDENCE § 1907 (3rd ed. 1940).

### III.

DeVore next contends that a recording of his conversation with the investigating agent should have been excluded on the authority of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1968), since no warrant was obtained before the recording was made. We disagree.

In *Katz* the Supreme Court overturned a conviction for illegally transmitting wagering information. The conviction had been obtained on the basis of a telephone conversation intercepted and recorded by F.B.I. agents. The agents tapped the wires running to a telephone booth used by defendant to make his calls.

In Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), a conviction for jury tampering based on the testimony of a government informer was upheld. The informer had gained admission to the defendant's hotel room by deception. While inside the room, he overheard conversations in which the jury tampering was plotted. The testimony of the informer was held properly admitted at Hoffa's trial.

In Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), the situation was similar to that in *Hoffa*, except that the government agent recorded one of his conversations with the defendant. Both the testimony of the agent and the recording were admitted at the defendant's trial for attempted bribery of an Internal Revenue Agent. The defendant was convicted, and his conviction was sustained by the Supreme Court.

---

2. The district judge apparently thought it was improper to admit a statement in corroboration unless the witness being corroborated had previously testified to exactly the same thing. Yet we are actually dealing with a prior consistent statement designed to corroborate Dr. DeVore's entire story. Therefore, the evidence was competent and should not have been excluded on the grounds that there had been no foundation laid for it during Dr. DeVore's testimony. *See* 4 WIGMORE, EVIDENCE § 1128 (3rd ed. 1940). Nevertheless, the testimony could reasonably be excluded under another theory—that it was cumulative of the evidence given by two other witnesses about an identical statement.

In our opinion the rationale of *Hoffa* and *Lopez* has survived the decision in *Katz*. *Katz* was based on the proposition that the defendant had a constitutionally protected right to rely on the privacy of a phone booth in making his calls. The emphasis was placed on the defendant's reasonable expectation of privacy with respect to third persons not participating in the conversation, rather than the failure of the government to obtain a wiretap warrant, although the decision was grounded on both points. The distinction between *Katz* on the one hand, and *Hoffa*, *Lopez*, and our case on the other, is clear enough. When a defendant has a conversation with another person he relinquishes his right of privacy with respect to that person. He may constitutionally complain of breach of privacy by an eavesdropper, but not of a breach of trust by the person he chooses to trust, however unwisely. Since the participants in a conversation are privileged to tell what was said, it necessarily must follow that a recording of what was said may either be used to corroborate the revelation, or simply as a more accute means of disclosure. Both the testimony of the disguised agent and the recording were properly admissible under the *Lopez* rationale.

We recognize that the above discussion conflicts with the decision in United States v. White, 405 F.2d 838 (7th Cir. 1969), cert. granted, 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969). In *White* government agents placed a transmitter on the person of an informer. Because of this transmitter, the agents were able to overhear conversations between White and the informer. With the informer's permission one agent also overheard conversations by listening over a telephone receiver, which the informer was also using to speak with White. At the trial the agents testified to the conversations they had heard, but the informer did not testify. Partly as a result of this testimony, White was convicted of narcotics violations.

The Seventh Circuit reversed White's convictions, despite the government's contention that the informer's consent to the eavesdropping took the case out of the *Katz* rationale. The court found "that the surreptitious placing of the kel set on [the] informer * * * was for all conceptual purposes the same as the surreptitious wiring of the telephone booth in *Katz*." 405 F.2d at 843. The court also reasoned that "[a] realistic appraisal of the defendant's conduct [permitted] no other conclusion than that he justifiably expected his conversations to be private." 405 F.2d at 846. Thus, the court rejected the idea that a defendant waives his right to privacy merely by speaking to an informer. See 405 F.2d at 838.

The court distinguished *Lopez* on the grounds that the intercepted conversation in that case was introduced for the "limited purpose" of corroborating an informer's testimony. See 405 F.2d at 838. It is difficult to see why waiver of the defendant's right of privacy should turn on whether the government decides to use an agent's testimony in corroboration of an informer or by itself. In our view there is no valid distinction between the two situations, and *Lopez* should control both. Our conclusion is buttressed by decisions of other circuits supporting a view contrary to that in *White*. See United States v. Kaufer, 406 F.2d 550 (2d Cir. 1969), affirmed on other grounds, 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414 (1969), rehearing denied, 395 U.S. 917, 89 S.Ct. 1741, 23 L.Ed.2d 232 (1969); Dancy v. United States, 390 F.2d 370 (5th Cir. 1968); see also Doty v. United States, 416 F.2d 887 (10th Cir. 1968), opinion withdrawn, Epps v. United States, 416 F.2d 887 (10th Cir. 1969), cert. pending, 6 Cr.L.R. 4143 (1970).

## IV.

In his final point of error appellant complains of the district court's refusal to reveal any part of the probation report to him or his counsel. We are asked to reconsider the validity of our decision in Baker v. United States, 388 F.2d 931 (4th Cir. 1968), where we held that it was within the trial court's dis-

cretion whether to reveal commentary on reputation, honesty, and community reputation to a defendant, and urged to hold instead that due process requires full disclosure. The same issue is presented in Waller v. Florida, Fla.App., 213 So.2d 623 (1969), cert. granted, 395 U.S. 975, 89 S.Ct. 2125, 23 L.Ed.2d 764 (1969), argued, 6 Cr.L.R. 4056 (1969). We do not reach this question because we accept the district judge's disclaimer of reliance on the contents of the probation report in sentencing.

The judgment of the district court will be

Affirmed.

WINTER, Circuit Judge (concurring):

I concur in the judgment of the Court and in most of the majority's opinion. I disassociate myself, however, from the essay on the law of entrapment contained in Part I of the opinion and the extensive dicta with regard to issues neither raised nor argued. While I express no present disapproval of Kadis v. United States, 373 F.2d 370 (1 Cir. 1967), I see no necessity at this time for adopting all of its holdings or its articulation of the basis for decision. To me defendant's entrapment arguments are answered sufficiently by the citation of our previous decision in Newman v. United States, 299 F. 128 (4 Cir. 1924).

With regard to sentencing, I stress that my concurrence rests solely upon my acceptance of the district judge's statement that he did not rely upon the presentence report in sentencing. If he was not going to rely on it, I suggest that the better practice would have been for him not to read it, lest it have some effect on him of which he was not aware. If he was going to rely on it, my view is that he should then exhibit it to counsel. See my separate opinion in Baker v. United States, 388 F.2d 931 (4 Cir. 1968). See also State v. Kunz, 55 N.J. 128, 259 A.2d 895; Waller v. Florida, 213 So.2d 623, cert. granted, 395 U.S. 975, 89 S.Ct. 2125, 23 L.Ed.2d 764, June 23, 1969.