**Howard JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11751.**

District of Columbia Court of Appeals.

Argued Feb. 7, 1978.

Decided June 21, 1978.

Dennis M. O'Keefe, Chicago, Ill., for appellant.

Peter O. Mueller, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell, and Stephen R. Spivack, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Charged in a three-count indictment with second-degree burglary,[1] grand larceny,[2] and receiving stolen goods of a value of $100.00 or more,[3] appellant was, after a jury trial, found guilty of the latter offense. Urging reversal, he claims as error (1) the trial court's refusal to instruct the jury on the defense of entrapment, (2) the admission of evidence of a subsequent offense, and (3) the submission to the jury of the issue of receiving stolen goods. We conclude that there was no error requiring reversal and affirm.

---

1. D.C.Code 1973, § 22–1801.

2. D.C.Code 1973, § 22–2201.

3. D.C.Code 1973, § 22–2205.

The facts which bring these issues into focus are, in substance, undisputed. In October 1975, the Metropolitan Police Department, in conjunction with the Federal Bureau of Investigation, commenced in the District of Columbia a fake "fencing" operation, which was later to become well known as "Operation Sting." Its purpose was to recover stolen goods, identify and cause to be prosecuted the persons involved, and to gather intelligence respecting similar and related criminal activity. To this end, police officers, posing as crime figures from New York, conducted in a warehouse at 2254—25th Place, N.E., a fake fencing establishment.

Initially, several police officers, functioning in casual clothes, were assigned to "get the word out on the streets" that stolen goods could be disposed of at the warehouse. In this connection some 30 persons, including appellant, who were unknown to the police and selected at random were approached and persuaded by various stratagems to come to the warehouse, where they were introduced to police officer Patrick Lilly, who posed as Pasquale La Rocca, the Mafia boss of the "Washington Fencing Operation." Officer Lilly informed such persons that he was in the business of buying stolen goods, including guns, and that he would pay "cold hard cash" for any such goods.[4]

Specifically, appellant was approached on October 16, 1975, by two police officers acting in an undercover capacity. They requested his assistance in disposing of a typewriter at the simulated fence operation in the warehouse and offered to pay him $25 if he would sell it for them there.[5] The officers explained that the fence was located in a warehouse and that because one of them owed the fence money, they were afraid that they would not be paid a good price for the typewriter. Appellant, who was then unemployed, agreed and they transported him to the warehouse from a bus stop in northwest Washington where he had been standing when they had approached him. At the warehouse appellant sold the typewriter to Officer Lilly for $175 and immediately turned over this money to the undercover officers who paid him $25 for his services. Before leaving, appellant was introduced to Officer Lilly, the purported Mafia boss, who regaled him with tales of criminal activity and urged him to come back if he ever had stolen goods he wanted to dispose of. Appellant was urged also to inform his friends of the operation, and Officer Lilly promised to pay him for each person sent to the warehouse with stolen goods.

Twenty-six days later, on November 11, 1975, appellant returned to the warehouse with a checkwriter and checkbook[6] which he sold to Officer Lilly for $50, saying when asked if the articles belonged to him, "I saw it and I took it." This transaction was also recorded on videotape and the tape was used as evidence in the prosecution of appellant in the case now on appeal. The purchase price of the checkwriter when acquired five or six months before the burglary was approximately $179 and was in good working condition when stolen.

Testifying in his own defense, appellant admitted that he had possessed the checkwriter and checkbook and that he sold both to Officer Lilly for $50. He insisted, however, that the transaction was handled by him for one "Zeke", a drinking buddy to whom he had ultimately turned over all of the money paid him at the warehouse. Appellant stated that Zeke told him that the checkwriter and checkbook were found in an abandoned automobile and that he, ap-

---

4. Of the 30 persons who were initially approached by the police, six of them, including appellant, returned subsequently with stolen goods. Those who were approached apparently informed others of the fencing operation, and ultimately about 300 persons responded.

5. The typewriter had in fact *not* been stolen, but was on loan from the manufacturer. The officers testified at trial that they told appellant it was "hot"; he, on the other hand, *denied* in his testimony that they told him it was stolen.

6. The checkwriter and checkbook had been stolen earlier that day during a burglary at the nearby Magna Mailing Corporation.

pellant, had no knowledge that they had been stolen.

During the cross-examination of appellant, the government, over objection, was permitted to interrogate him concerning a subsequent visit to the warehouse on January 26, 1976, when he sold a typewriter. Appellant admitted telling Officer Lilly at that time that the typewriter had been stolen. He explained, however, that he was acting for another person and that he turned over the proceeds of the sale to that person.

At the close of the evidence, the court denied a defense motion for a judgment of acquittal. The court denied also a request for an instruction on the defense of entrapment. The case was then submitted to the jury, which found appellant not guilty on the burglary and larceny counts, but found him guilty on the receiving-stolen-goods count. This appeal followed.

Appellant urges that the court erred when it refused to instruct the jury on entrapment; such contention necessarily presents the issue whether the evidence fairly raised for consideration by the jury the defense of entrapment. All the evidence adduced at trial when viewed in a light most favorable to appellant was that he was unknown to the police, that they approached and offered to pay him for delivering a typewriter to the warehouse, that he had no knowledge it was stolen, that they drove him there and paid him for doing the errand and that while he was there another undercover officer posing as a criminal fence urged him to come back with stolen goods for which he would be paid top prices in cash. Appellant returned 26 days later with stolen goods received from a friend and exchanged them for cash.

■ We deem the initial approach to him by police in October as "only solicitation—the providing of opportunity," *United States v. DeVore*, 423 F.2d 1069, 1071 (4th Cir. 1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1604, 29 L.Ed.2d 119 (1971), which did not constitute entrapment. *See United*

*States v. Russell*, 411 U.S. 423, 435–36 (1973); *United States v. Boone*, 177 U.S. App.D.C. 265, 266, 543 F.2d 412, 413 (1976). Thereafter, 26 days elapsed between the time the officer posing as the fence presented the sales pitch to appellant offering cash for any stolen goods he could produce, and appellant's subsequent reappearance at the warehouse with the stolen checkbook and checkwriter. Given the showing that appellant was merely solicited for the sale of stolen goods by a police officer and that after a lapse of 26 days he responded voluntarily *and without further encouragement* from the police, we cannot say that the court erred in concluding that the evidence did not raise the entrapment issue for the jury.

■ Appellant claims next that it was error to permit government counsel to interrogate him during cross-examination concerning the commission of a subsequent offense. What appears is that on both direct and cross-examination, appellant denied guilty knowledge that the checkwriter and checkbook sold to Officer Lilly on November 11, 1975, had been stolen. Certainly, therefore, evidence that appellant, on January 26, 1976, sold at the warehouse a typewriter, representing to Officer Lilly that it had been stolen, was relevant on the issue of his guilty knowledge on November 11, 1975. *See United States v. Gallo*, 177 U.S.App.D.C. 214, 217–18, 543 F.2d 361, 364–65 (1976). *See also United States v. Brown*, 185 U.S.App.D.C. 252, at 253, 567 F.2d 119, at 120 (1977), where the court said:

> The question in each case is not whether the events sought to be introduced occurred before, during, or after commission of the alleged offense. The question is whether the events are relevant to and probative of defendant's willingness to commit the crime charged when first solicited to do so by a government agent.

*And see United States v. Rodriguez*, 474 F.2d 587, 590 (5th Cir. 1973). Thus, we find no error in permitting the questions.[7]

7. In permitting the questions, the court announced that it would instruct the jury as to the limited purpose for which the evidence could be considered and from aught that appears in the record the jury was so instructed.

▮ Appellant contends finally that the evidence was insufficient to go to the jury on the issue of his guilt of possession of stolen property ". . . of the value of $100 or upwards."[8] We cannot agree. There was uncontroverted testimony at the trial that the checkwriter was purchased five or six months before the theft; that it had a price tag of $179.00; that it was a very durable machine calculated to last indefinitely and when stolen was in good working condition. There was testimony also that the checkbook had a replacement value of $15.00. From the totality of this evidence, the jury could have found, as it apparently did, that appellant possessed stolen property of a value of $100.00 or more.

The judgment of conviction is affirmed.

*So Ordered.*

---

8. D.C.Code 1973, § 22–2205.