953 F.2d 639
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony BAKER, a/k/a Clayton Perkins, Defendant-Appellant.
 No. 91-5520.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1991.
Decided Jan. 31, 1992.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CR-90-324)
 Argued: Tyler Christian Johnston, Assistant Federal Public Defender, Baltimore, Md., for appellant; Ethan L. Bauman, Assistant United States Attorney, Baltimore, Md., for appellee.
 On Brief: Fred Warren Bennett, Federal Public Defender, Baltimore, Md., for appellant; Richard D. Bennett, United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant appeals his convictions for distribution of cocaine and unlawful possession of food stamps. He argues that the Sentencing Guidelines are unconstitutional and that the evidence supported his entrapment defense. There being no error below, we affirm the district court.
 
 I.
 
 2
 Defendant Anthony Baker was convicted on two counts of distribution of narcotics in violation of 21 U.S.C. § 841(a)(1) (1991) and two counts of unlawful acquisition of food stamps in violation of 7 U.S.C. § 2024(b) after a successful sting operation conducted by Special Agent James Knorr of the U.S. Department of Agriculture.* An informant, Charles Tyler, set up several meetings between Agent Knorr and defendant at which defendant offered Knorr drugs in exchange for food stamps. The manner in which these exchanges occurred is one aspect of the issues appealed. Defendant claims he was entrapped. Informant Tyler apparently pled with Baker to become involved as he needed the money (Tyler split the food stamps with Baker after each transaction). There is evidence that Baker initially resisted. Agent Knorr testified that, at each transaction, Baker indicated that he would "see [Knorr] next time." This occurred on three occasions after which time an indictment was returned against defendant, and he was arrested. Defendant was convicted as outlined above after a trial by jury.
 
 
 3
 Defendant was sentenced as a career offender under U.S.S.G. § 4B1.1. Defendant had previously been convicted for manslaughter, assault, and possession of heroin and drug paraphernalia. If he had not been a career offender, defendant's guideline range would have been 27 to 33 months. As a career offender, the range increased to 168 to 210 months. The trial court sentenced defendant to 168 months. This appeal followed.
 
 II.
 
 4
 Defendant is first concerned with the interpretation given to Sentencing Guideline § 4B1.1 in light of the language and purpose of the guidelines enabling legislation. 28 U.S.C. § 994(h) provides the statutory authorization for the career offender guideline. It directs the Sentencing Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized ..." for defendants with the requisite prior offenses. 28 U.S.C. § 994(h) (1991). U.S.S.G. § 4B1.1, the career offender provision, interprets the phrase "at or near the term authorized" to mean at or near the term authorized by statute. Thus, in a situation such as defendant's, once he is determined to be a career offender, his guideline range is increased to reflect the maximum penalty authorized by statute.
 
 
 5
 Defendant believes that the phrase "at or near the term authorized" can only logically be read to mean at or near the term authorized by the guidelines. Such a reading would result in a substantially lower guideline range. Defendant argues that huge, unwarranted disparities result from the reading normally given the statute. He argues that defendants with similar criminal records may be sentenced to greatly different terms of imprisonment depending on the penalty authorized for their most recent crime. Defendant offers the legislative history of the statute as evidence of congressional intent to read the statute his way. A provision which would have mandated sentences at or near the statutory maximum for career offenders was proposed and rejected, and the current language of the statute was implemented. In its commentary, the Senate stated that the matter should be delegated to the Sentencing Commission. S.Rep. 98-225, 98th Cong., 1st. Sess. 175 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3358.
 
 
 6
 Defendant offers no persuasive authority by which this Court might question the interpretation of the statute offered by the Sentencing Commission. Congress apparently considered the matter and decided to leave the issue to the discretion of the Sentencing Commission. This Court is satisfied with the Commission's interpretation. See United States v. Sanchez-Lopez, 879 F.2d 541, 559 (9th Cir.1989) ("Congress made it very clear that the Sentencing Commission should ensure that individuals who [met the necessary requirements] should receive a sentence of imprisonment under the guidelines that is at or near the maximum term authorized by statute. The career offender provision, section 4B1.1, implements Congress' mandate." (citations omitted)).
 
 
 7
 Further, the approach of the Commission in allowing a range even for a career offender is an indication that there is some flexibility in the system. Defendant received the benefit of that flexibility since his sentence of 168 months is substantially below the statutory maximum of 20 years.
 
 III.
 
 8
 Defendant also argues that this sentencing scheme denies him the equal protection of the laws. He argues that the law is over-inclusive in that it treats different defendants similarly and under-inclusive in that it treats similar defendants differently. Defendant believes that to focus on the fortuity of the statutory maximum of the third offense is an arbitrary and capricious method of sentence enhancement. Defendant concedes that the scheme is subject to rational basis scrutiny.
 
 
 9
 There is no question that this scheme passes the rational basis test. It is certainly rational to adopt a system in which sentences depend upon a defendant's criminal history and the offense committed. See, e.g., United States v. Litteral, 910 F.2d 547 (9th Cir.1990) (guidelines do not violate equal protection by using prior sentences in determining current sentence; there is a legitimate interest in having more dangerous criminals serve longer sentences); and see United States v. Hayden, 898 F.2d 966, 967 (5th Cir.1990) ("The imposition of greater punishment based on the nature of the crime and on the recidivist nature of the perpetrator is recognized as a legitimate sentencing principle.") (citing Solem v. Helm, 463 U.S. 277 (1983)).
 
 IV.
 
 10
 Defendant next argues that the government should have been required to file a notice of prior conviction pursuant to 21 U.S.C. § 851 (1991). 21 U.S.C. § 851 (1991) provides:
 
 
 11
 No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless ... the United States Attorney files an information with the court ... stating in writing the previous convictions to be relied upon. Defendant states simply that no such notice was ever filed in this case. This section is inapplicable in this context. It was enacted more than a decade before the legislation which authorized the Sentencing Guidelines was passed. Section 851 is part of a statutory scheme which prescribes enhanced minimum and maximum penalties where the defendant has qualifying prior convictions. The 20 year maximum sentence applied in this case is not an enhanced or increased sentence. The government did not seek nor did defendant receive any mandatory minimum or enhanced maximum sentence.
 
 V.
 
 12
 Finally, defendant argues that he proved entrapment as a matter of law. As noted earlier, the evidence showed that defendant was initially reluctant to participate in the drug sale but eventually relented and even indicated a willingness to offer more drugs to Agent Knorr, saying "I'll hit you harder next time," referring to his desire to sell Agent Knorr more drugs next time. The lower court instructed the jury on the issue of entrapment.
 
 
 13
 The essential element of the entrapment defense is the defendant's lack of predisposition to commit the crime charged. United States v. Russell, 411 U.S. 423 (1973). To be entitled to a jury instruction on entrapment, the defendant must produce evidence of "inducement" and "excessive behavior" by a government agent "so inducive to a reasonably firm person as likely to displace mens rea." United States v. De Vore, 423 F.2d 1069, 1072 (4th Cir.1970), cert. denied, 402 U.S. 950 (1971). Before a jury's verdict will be overturned, a review of the evidence must show that no rational finder of fact could have convicted. United States v. Hunt, 749 F.2d 1078, 1085 (4th Cir.1984), cert. denied, 472 U.S. 1018 (1985).
 
 
 14
 The evidence showed sufficient predisposition to overcome entrapment. It is undisputed that defendant made reference to potential future sales at each of the transactions for which he was convicted. Were he truly hesitant to participate, he would not have made such statements. The trial court properly handled the matter by submitting it to the jury. Defendant offers no basis by which this Court might overturn the jury's determination.
 
 
 15
 There being no error below, the rulings and judgment of the district court are hereby
 
 
 16
 AFFIRMED.
 
 
 
 *
 Defendant was also acquitted on one count each of distribution of controlled substances and illegal acquisition of food stamps